Parkview Hospital and Tri-County Hospital, Petitioners v. Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued December 9, 1980, before President Judge CRUMLISH and Judges WILKINSON, JR., MENCER, ROGERS, CRAIG, WILLIAMS, JR. and PALLADINO. Judges BLATT and MACPHAIL did not participate.

*James H. Stewart, Jr., Nauman, Smith, Shissler & Hall,* for petitioners.

*Margaret Hunting,* Deputy Attorney General, with her *John A. Kane,* Assistant Attorney General, *Joel M. Ressler,* Deputy Attorney General, and *Harvey Bartle, III,* Acting Attorney General, for respondents.

OPINION BY JUDGE WILKINSON, JR., January 21, 1981:

By an Application for an Ex Parte Preliminary Injunction and by a Petition for Review, the Hospital Association of Pennsylvania (Association) and over 150 individual member hospitals brought an action in equity to enjoin the operation of a "nondiscrimination clause" contained in Paragraph B(11) of a November 1979 Inpatient Hospital Care Agreement (Agreement). The Agreement is a contract between the Department of Public Welfare (Department) and hospitals agreeing to participate in the Pennsylvania Medical Assistance (Medicaid) program. Section 443.1 of the Public Welfare Code, Act of June 13, 1967, P.L. 31, *as amended,* added by Section 5 of the Act of July 31, 1968, P.L. 904, *as amended,* 62 P.S. §443.1,

requires all hospitals seeking to receive Medicaid payments to enter into a written agreement with the Department. Paragraph B(11) of the Agreement was included by the Department pursuant to Section 49.101 of the Human Relations Commission's contract compliance regulations, 16 Pa. Code §49.101, and incorporates the "nondiscrimination clause" contained in 16 Pa. Code §49.101(d). The Medicaid contracts to which the Association's member hospitals were parties when the Application for an Ex Parte Injunction and the Petition for Review were filed did not contain the "nondiscrimination clause" and were on the verge of terminating.

On November 16, 1979 a hearing on the application for an injunction was held before the late President Judge BOWMAN, who entered an order enjoining both the termination of the then existing medicaid contracts and the implementation or enforcement of Paragraph B(11) of the new Agreement then being offered by the Department. The hospitals signed the new contracts before President Judge BOWMAN, after a hearing on continuation of the temporary injunction, issued a new order on December 19, 1979 continuing the injunction with respect to certain subsections of Paragraph B(11) of the Agreement. An appeal from that preliminary injunction now awaits the review of the Pennsylvania Supreme Court. Upon stipulation by counsel for all parties and order of this Court, Parkview Hospital and Tri-County Hospital of Springfield remain as the petitioners.

The Petition for Review submits, *inter alia,* that the affirmative action duties imposed by the Agreement's Paragraph B(11) are beyond the jurisdiction and authority of the Department, that they are inconsistent with provisions of the Pennsylvania Human Relations Act, Act of October 27, 1955, P.L. 744, *as amended,* 43 P.S. §951 *et seq.,* and that the Human Re-

lations Commission's contract compliance regulations and their source, Governor's Executive Order 1972-1, are unauthorized. Presently before the Court are the Department's preliminary objections.

The Department's first preliminary objection raises the question of this Court's jurisdiction over the matter in that petitioners have alleged no harm in connection with inclusion of the "nondiscrimination clause" and have no standing to bring this action. The lack of standing argument appears to be based on the Department's assertion that if petitioners "do not want to comply with the provisions of the Agreement, they can elect not to participate in the medical assistance program." We reject the theory that the petitioners "lost no right or legitimate expectation by the addition of" Paragraph B(11) to the Agreement. *Fullilove v. Klutznick,*      U.S.     ,    , 100 S.Ct. 2758, 2793 n.13 (POWELL, J., concurring).

Our Supreme Court in *William Penn Parking Garage, Inc. v. City of Pittsburgh,* 464 Pa. 168, 346 A.2d 269 (1975), held that standing requires an aggrieved party showing a substantial, direct and immediate interest in the subject matter of the litigation.

[T]he requirement of a 'substantial' interest simply means that the individual's interest must have substance—there must be some discernible adverse effect to some interest other than the abstract interest of all citizens in having others comply with the law. The requirement that the interest be 'pecuniary,' which may once have had independent significance, no longer adds anything to the requirement of an interest having substance, as defined above.

The requirement that an interest be 'direct' simply means that the person claiming to be aggrieved must show causation of the harm to his interest by the matter of which he complains. . . .

. . . .

The remaining requirements of the traditional formulation of the standing test are that the interest be 'immediate' and 'not a remote consequence of the judgment.' As in the case of 'substantial' and 'pecuniary,' these two requirements reflect a single concern. Here that concern is with the nature of the causal connection between the action complained of and the injury to the person challenging it.

*Id.* at 195, 197, 346 A.2d at 282-83 (footnote omitted; citations omitted).

Under the applicable tests summarized above, we hold that the petitioners have standing to bring the present action.

The Department's preliminary objection raising a question of the lack of equity jurisdiction asserts that the petitioners have failed to allege immediate and irreparable harm. From our viewpoint the late President Judge BOWMAN's opinion issued in granting the preliminary injunction has succinctly and correctly identified the immediate and irreparable harm petitioners could suffer in the interim before a final decision on the merits.

Finally, the Department has filed a multi-pronged preliminary objection in the nature of a demurrer. The Department submits that the petitioners failed to establish, *inter alia,* that the governor lacked authority to issue Executive Order 1972-1, that the Human Relations Commission's regulations are unlawful, and that any provisions of the Agreement are not authorized by statute.

A demurrer should be sustained only where the complaint shows on its face that the claim is devoid of merit. *Department of Transportation v. Bethlehem Steel Corp.,* 33 Pa. Commonwealth Ct. 1, 380 A.2d 1308 (1977). "[A] demurrer is not to be sustained and the complaint dismissed unless 'the law says with certain-

ty that no recovery is possible.'" *Reinford v. Conrail,* 46 Pa. Commonwealth Ct. 167, 169, 405 A.2d 1151, 1152 (1979) (quoting *Hoffman v. Misericordia Hospital of Philadelphia,* 439 Pa. 501, 503, 267 A.2d 867, 868 (1970)). We cannot say that under *Shapp v. Butera,* 22 Pa. Commonwealth Ct. 229, 348 A.2d 910 (1975), there cannot be brought a claim that Executive Order 1972-1 may have been beyond the executive power. Further, a reading of *Fullilove v. Klutznick, supra,* and *Chmill v. City of Pittsburgh,* 488 Pa. 470, 412 A.2d 860 (1980), leads us to conclude that there may be a legal basis for successfully challenging Paragraph B(11) of the Agreement and the Human Relations Commission's contract compliance regulations. Since this important case would be better framed for decision upon a stipulation or other structuring of all relevant facts and since any doubt as to whether a demurrer should be sustained should be resolved in favor of refusing to enter it, *Department of Transportation v. Bethlehem Steel Corp., supra,* the Department's preliminary objections will be overruled.

Accordingly, we will enter the following

## ORDER

AND Now, January 21, 1981, the preliminary objections of the Department of Public Welfare are overruled.

---

DISSENTING OPINION BY JUDGE CRAIG:

As the majority opinion indicates, the information before us at the preliminary objections stage of a case may be insufficient for the fullest consideration of some issues. Respondents, rather than shooting from the hip with preliminary objections, in some cases should await the completion of the pleadings, when the issues may be more fully framed by motions for summary judgment or stipulations.

But this case need not await such elaboration for its disposition. As the majority opinion has stated, the preliminary objections concerning jurisdiction and standing must be overruled. However, I respectfully dissent from the majority's conclusion that we should not sustain the respondent's demurrers as to the legal merits of the petition. The challenged nondiscrimination contract provisions serve only to implement constitutional policies against discrimination and would not violate due process or equal protection, either as to the petitioners or as to non-minority or male applicants or employees.

Therefore I would sustain the demurrers and dismiss these petitions on the ground that petitioners have not pleaded a basis in law for a cause of action.

Judge WILLIAMS, JR. joins this dissent.