Philadelphia, Appellant, *v.* Mancini.

356

Argued January 4, 1968. Before MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Levy Anderson*, First Deputy City Solicitor, with him *Frank J. Pfizenmayer*, Assistant City Solicitor, *Matthew W. Bullock, Jr.*, Second Deputy City Solicitor, and *Edward G. Bauer, Jr.*, City Solicitor, for City of Philadelphia, appellant.

*Michael F. Smith*, for appellee.

OPINION BY MR. JUSTICE JONES, October 3, 1968:

Amil Mancini was a cement contractor in Philadelphia whose business generally entailed working for general construction contractors for which work Mancini would submit bids to the general contractors. Mancini's business required the employment of other persons, both residents and nonresidents of Philadelphia.

The City of Philadelphia (City), by ordinance, imposes a tax on all salaries, wages and other compensation earned by residents of the City or by nonresidents whose work is done or services performed within the

City.[1]  Under the provisions of this ordinance each employer, "who employs one or more persons on a salary, wage, commission or other compensation basis" *must* deduct the tax, make a return and pay the tax every three months.[2]

Mancini for 1957 did file the requisite wage tax forms but for 1958, 1959 and 1960 did not file any returns or pay any taxes under the ordinance.  After an examination of Mancini's records, although the City levied assessments for the years in question against Mancini,[3] he has never paid any of the taxes allegedly due the City.

The examination of Mancini's records revealed that, during the three years in question, Mancini neither withheld nor deducted any wage taxes from the wages due to his employees.

Mancini's position is that, during this three year period, the general contractors for whom he worked paid him only the *net* amount of wages due his employees, i.e., that amount which, after deduction of the wage tax, was due his employees, and the amount of the wage tax due on his employees' wages was withheld from him by the general contractors and never paid to or received by him.[4]

The City's position is that the general contractors paid Mancini an amount necessary to pay for materials, the employees' *net* wages and sufficient to allow Mancini "a draw of one hundred dollars a week which [he] very seldom cashed" to support his family, and the City contends that it was Mancini's obligation *first*

---

[1] Philadelphia Wage and Net Profits Tax Ordinance of December 13, 1939, as amended (§19-1502 of Philadelphia Code).

[2] Ibid. (§19-1504 of the Philadelphia Code).

[3] The taxes claimed are: 1958—$1,472.52;  1959—$2,706.80; 1960—$325.31.

[4] In Mancini's words, the general contractors paid "the materials and net wages, that's all".

to deduct from *any* moneys received from the general contractors the amount of wage tax due on the employees' wages.

On October 15, 1965, the City instituted an equity action against Mancini in the County Court of Philadelphia wherein the City sought: (a) an injunction restraining Mancini from disposing of, assigning or transferring any of his assets; (b) a declaration that Mancini was a *trustee ex maleficio* of the wage taxes; (c) a decree that Mancini, as *trustee ex maleficio,* pay to the City all the wage taxes plus interest and penalties. After answer filed and hearing held, the court entered a decree dismissing the equity action. From that decree the instant appeal arises.

It is clear that: (a) Mancini, whether or not he received the amount of tax money from the general contractors, would be subject to an assumpsit action; (b) that Mancini now urges he is not subject to this equity action because, under the instant factual circumstances, he could not be held to be a *trustee ex maleficio* since there was no *res* upon which a trust could be constructed.

The basic question on this appeal is whether equity is the proper forum wherein, under the present facts, the City can enforce its claim for unpaid wage taxes. The rationale of the court below is that equity was not the proper forum because a constructive trust—which would make Mancini a *trustee ex maleficio*—could not arise in the absence of a trust *res* and, since Mancini did not receive in possession the amount of wage tax deduction, there was no trust *res*; moreover, the court found that Mancini had not been unjustly enriched, had not embezzled and had not been reckless in the handling of the tax money and, in the absence of such conduct, assumpsit, not equity, was the proper remedy.

If the City is to be successful in holding Mancini liable as a *trustee ex maleficio* of the wage taxes due

the City, it must, as the lower court concluded, establish that a *res* exists or existed upon which a constructive trust can be impressed. See: Restatement, Restitution, §160, comment i. Cf. Restatement 2d, Trusts, §74. If Mancini held property at any point in time which properly can be decreed the subject of a constructive trust, the mere fact that he does not now hold such property will not preclude the imposition of personal liability upon him for the improper disposition of such property. ". . . every person who receives money to be paid to another or to be applied to a particular purpose is a trustee, if so applied, as well as when not so applied." *Vosburgh's Estate,* 279 Pa. 329, 332, 123 A. 813, 815 (1924). See also: *Rife v. Geyer,* 59 Pa. 393 (1869) and Restatement, Restitution, §215(1).

The City initially contends that a trust *res* may be found in the funds advanced to Mancini by the general contractors out of which he paid his material costs, net wages and his own salary. The argument continues that Mancini became liable as a constructive trustee because he paid these expenses without first deducting sums due the City for wage taxes. With this we cannot agree.

In that class of cases, where a constructive trust is sought to be impressed on funds which are required to be withheld for another under a duty imposed by law or by agreement, there must be some specific funds set aside or collected for the other's account by the person sought to be charged as constructive trustee: *McKee v. Paradise,* 299 U.S. 119 (1936); *Philadelphia v. Louis Laboratories, Inc.,* 201 Pa. Superior Ct. 16, 20, 189 A. 2d 891, 893 (1963); *Philadelphia v. Pioneer Custom Upholstery Co. Inc.,* 199 Pa. Superior Ct. 528, at pp. 530-531, 185 A. 2d 641, 642 (1962); *Gama v. County of Kern,* 179 Cal. App. 2d 1, 3 Cal. Rptr. 380 (1960); *In re Allied Electric Products, Inc.,* 194 F. Supp. 26 (1961).

In *Allied,* supra, the United States Government claimed that certain funds held by a bankrupt corporation constituted trust funds which represented moneys required by the Internal Revenue Code to be deducted from employees' wages for social security, unemployment insurance and income taxes. In vacating allowance of the claim the Court stated (at 194 F. Supp. page 30) : "It was found by the Referee in Bankruptcy, after the initial hearing, that the Debtor 'paid net wages' and 'did not set aside withholding and social security taxes in a special trust fund.' (Certificate of Review, December 1, 1958). He concluded that the Debtor 'neither collected nor withheld the taxes' for the period in question. It seems reasonably clear that under these circumstances there was no trust fund to which the legal right of the United States could attach. The absence of such a trust fund could not possibly support the right of the United States to an equitable lien on the bank account of the Debtor or any other asset. . . ."

The City's theory of recovery is similar to that advanced in *McKee,* supra. In *McKee,* an employer had agreed to withhold from his employees' wages sufficient in amount to cover membership fees and dues in an Association maintained for the employees' benefit. For a period of time the employer failed to deduct and remit to the Association the agreed amounts, although the employer did make bookkeeping entries to this effect. When the employer went into bankruptcy a preferential claim to its remaining funds was filed on the basis that the employer was a constructive trustee of the funds which were never remitted. The United States Supreme Court rejected this position and in terms very appropriate to this matter stated at 299 U.S. pp. 122-123 that "The bankrupt was a debtor which had failed to pay its debt. We know of no

principle upon which the failure can be treated as a conversion of property held in trust. At no time throughout the whole period was there a trust fund or res. No fund was segregated or set up by special deposit or in any manner. When the wages became due, there was no such fund but only the general assets of the employer and its obligation to pay a debt. The agreement of the employer to pay the association instead of the employee did not give to the employee or the association equitable title to or lien upon any part of the employer's property. The assets of the employer remained, as they were before, general assets. It would be impossible to state all the circumstances in which equity will fasten a constructive trust upon property in order to frustrate a violation of fiduciary duty. See: 3 Pomeroy, Equity Jurisprudence, §§1044 et seq. But the mere failure to pay a debt does not belong in that category."

The conclusions of the lower court and authorities above cited are amply supported by reason and by general principles of trust law. As previously noted, no trust can properly be held to exist unless there is a *res* upon which the trust can be fastened. The mere failure by Mancini to set aside and remit moneys to the City, which he was required by law to do, cannot establish a trust of these moneys. The evidence is clear that, at no time did he withhold from his employees' wages any sum representing wage taxes due the City.[5]

---

[5] The City averred in its complaint that Mancini had withheld the taxes due from the wages paid his employees for the period involved. These averments were read into evidence at the hearing because Mancini had insufficiently denied them in his answer. However, a city tax examiner who audited Mancini's records, testified, on both direct and cross-examination, that the records did not disclose any wage taxes were withheld. And when Mancini testified that he did not withhold from his employees' wages the taxes due, the City failed to object on the basis that such fact had been

The cases cited by the City do not support its position that Mancini is a *trustee ex maleficio* as to the wage taxes which should have been withheld. In *Philadelphia v. Heinel Motors, Inc.*, 142 Pa. Superior Ct. 493, 16 A. 2d 761 (1940) the seller involved had collected the sales tax and a true *res* thus existed. That this was the actual holding of the *Heinel* case was reiterated by that same court in *Philadelphia v. Louis Laboratories, Inc.*, supra. The adjudication of the court in *City of Philadelphia v. J. & E. Inc.* (Ct. C.P. Phila. County, Dec. Term 1958, No. 2171 unreported opinion of June 9, 1961), also relied upon by the City, is unclear as to whether the corporate defendant did or did not actually withhold the wage and amusement taxes due the City in that case. The other cases relied upon by the City are not relevant to the basic issue in this case, namely, whether Mancini is a *trustee ex maleficio* of the wage taxes which should have been but were not deducted and remitted to the City.

The City next contends that a sufficient *res* upon which a constructive trust can be impressed lay in the accounts receivable or choses in action which Mancini received in lieu of the cash due from the general contractors.

It is true that a chose in action can be the subject of a trust. Restatement 2d, Trusts, §82, comment a; Scott on Trusts, Vol. 1, §74.1 (2d Ed.). Furthermore, the accounts receivable which Mancini held that represented moneys not paid to him because they represented wage taxes would be the proper subject of a constructive trust in favor of the City. Such funds if collected by Mancini would represent specific property which rightfully belongs to the City.

---

admitted by the pleadings. Moreover, the City does not now argue that Mancini withheld any moneys for the wage taxes; to the contrary, it claims that Mancini should have withheld the taxes before he paid any of his business expenses.

However, there are certain factors which prove fatal to the City's position. First, it must be recognized that the City has for the first time raised this argument on appeal; it was not advanced in the pleadings or in any other manner in the court below. Secondly, the City did not present evidence which shows with any degree of certainty what accounts receivable Mancini held which represented wage taxes due the City.[6] Moreover, the Internal Revenue Service of the Federal Government seized Mancini's accounts receivable for the years in question because Mancini had been delinquent in paying federal withholding taxes.

A trust cannot be impressed for the benefit of the cestui que trust unless the trust property is identified or the corpus of the trust is traced into some specific fund or thing into which the original trust property has passed in some form. See: *In re Allied Products, Inc.*, supra, and *Murphy v. Gordon*, 236 Pa. 504, 84 A. 964 (1912).

Thus, under the particular facts of this case, Mancini cannot be held liable as a *trustee ex maleficio* of the wage taxes due on this theory. This result flows not from the fact that he no longer holds the accounts receivable representing wage taxes since he would be subject to liability for their improper disposition. See: Restatement, Restitution, §215(1); *Vosburgh's Estate,* supra; *Rife v. Geyer,* supra. He is not liable because the City has failed to prove with the required certainty and definiteness the accounts receivable held by Mancini which represented wage taxes. Furthermore, we do not find that Mancini was guilty of fraudulent, reckless or other conduct with regard to the disposi-

---

[6] It appears from the record that it was a prevalent practice for the general contractors to withhold from Mancini not only City wage taxes but also sums representing federal payroll taxes and other sums due under the various contracts.

tion of these accounts which would justify a court of equity granting the extraordinary relief requested.

" 'Constructive trusts are trusts not created by words expressed or implied, evincing an intention to create a trust, but by the construction of equity, in order to satisfy the demands of justice.' " *Fox v. Fox,* 125 Pa. Superior Ct. 541, 547, 189 A. 758, 761 (1937). We quote from the opinion of the lower court: "Sufficient for the ends of justice in this case is it to say that the ordinance creates a duty to collect taxes; if there be recklessness, unjust enrichment, embezzlement, then the ends of justice require a trusteeship ex maleficio with its accompanying remedies de rigueur; absent these conditions, sufficient unto the ends of justice is the ordinary remedy accorded by a plain assumpsit action."

The decree of the lower court dismissing this action should be affirmed.

The present disposition of the cause renders unnecessary any discussion of laches as barring the City's claim for the 1958 taxes due.

Decree affirmed.

Mr. Justice COHEN and Mr. Justice ROBERTS concur in the result.

Mr. Chief Justice BELL took no part in the consideration or decision of this case.