433 A.2d 450

The HOSPITAL ASSOCIATION OF PENNSYLVANIA, et al.,

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF PUBLIC WELFARE, Appellant.

No. 80-2-254.

Supreme Court of Pennsylvania.

Argued May 21, 1981.

Decided July 2, 1981.

See also 424 A.2d 599.

Margaret Hunting, Deputy Atty. Gen., Edward G. Biester, Jr., Atty. Gen., for appellant.

James H. Stewart, Jr., Harrisburg, for appellees.

Before ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

This is an appeal from a decree of the Commonwealth Court granting a preliminary injunction in favor of appellees, the Hospital Association of Pennsylvania and 175 hospitals, and against appellant, the Commonwealth's Department of Public Welfare. The decree prohibits the Department from including certain provisions of a "non-discrimination clause" in its written agreements for inpatient hospital-care reimbursement with the hospitals. Since the entry of the preliminary injunction, all but two of the 175 hospitals have agreed that the injunction should be dissolved.

We are of the view that the preliminary injunction was improperly issued. Hence we vacate the decree and dismiss the motion for preliminary relief.

I

The Department's inclusion of a non-discrimination clause (reproduced at Appendix) is mandated by the "Contract Compliance Regulations" of the Pennsylvania Human Relations Commission. These regulations had their genesis in 1973 when, pursuant to Executive Order 1972–1 (December 6, 1972) and section 7(d) of the Pennsylvania Human Relations Act, Act of October 27, 1955, P.L. 744, 43 P.S. § 957(d) (1964), the Commission gave notice of proposed rulemaking. 3 Pa.Bull. 2432 (October 20, 1973). After review of public comments, the Commission prepared and proposed a revised set of rules. 3 Pa.Bull. 2966 (December 29, 1973). A first set of rules was adopted by the Commission in February of 1974 and made effective as of that March. 4 Pa.Bull. 409 (March 9, 1974). That same year the Commission proposed amendments, 4 Pa.Bull. 2534 (December 14, 1974), and adopted them, 5 Pa.Bull. 434 (March 8, 1975). The present rules, effective March 8, 1975, reflect those amendments.

The "Policy and Purpose" section of the Contract Compliance Regulations provides:

"Nondiscrimination and equal opportunity are the policy of the Commonwealth and the Commission in all its decisions, programs and activities. The purpose of this Chapter is to achieve the aims of the United States and Pennsylvania Constitutions, Executive Order 1972–1, the Pennsylvania Human Relations Act (43 P.S. § 951 et seq.), and 43 P.S. § 153, by assuring that all persons are accorded equal employment opportunity without regard to race, color, national origin, ancestry, religious creed, age or sex. This Chapter applies to the contracting agencies of this Commonwealth and to contractors who perform under state contracts."

Accordingly, pursuant to 16 Pa.Code § 49.101(a),

"[e]very state contract . . . shall contain a nondiscrimination clause barring discrimination in employment because of race, color, religious creed, national origin, ancestry, sex or age."

"State contract" is defined as

"any agreement, purchase order or arrangement or modification thereof between the Commonwealth or any State contracting agency, and any person to be paid in whole or in part, directly or indirectly, by public funds or in kind contributions from the Commonwealth."

16 Pa.Code § 49.2(d) (as reported at 5 Pa.Bull. 434 (March 8, 1975)). Here, "medical assistance payments . . . in behalf of eligible persons" are made to hospitals which are

"qualified to participate under Title XIX of the Federal Social Security Act [(42 U.S.C. § 1396 et seq.)] and have entered into a written agreement with the [Department of Public Welfare] regarding matters designated by the secretary as necessary to efficient administration, such as hospital utilization, maintenance of proper cost accounting records and access to patients' records."

Public Welfare Code, Act of June 13, 1967, P.L. 31, § 443.1, 62 P.S. § 443.1 (Supp.1981), added by Act of July 31, 1968, P.L. 904, § 5.

The Human Relations Commission's regulations also specify the contents of the mandatory non-discrimination clause. 16 Pa.Code § 49.101(d). The clause covers the matters of applicants for employment, advertisements or requests for employment, collective bargaining agreements, delegation of employment practices, recruitment practices resulting in exclusion of "minority group persons," contractor compliance with the contract compliance regulations, and the scope of contractor obligations.

Also included in the mandatory non-discrimination clause, and the subject of the preliminary injunction here, are the following four provisions:

"(7) Contractor shall furnish all necessary employment documents and records to, and permit access to its books, records and accounts by, the contracting agency and the Human Relations Commission, for purposes of investigation to ascertain compliance with the provisions of the Contract Compliance Regulations, pursuant to § 49.35 of these Regulations. If Contractor does not possess documents or records reflecting the necessary information requested, it shall furnish such information on reporting forms supplied by the contracting agency or the Commission.

(8) Contractor shall actively recruit minority subcontractors or subcontractors with substantial minority representation among their employes.

(9) Contractor shall include the provisions of this non-discrimination clause in every subcontract, so that such provisions will be binding upon each subcontractor.

(10) The terms used in this non-discrimination clause shall have the same meaning as in the Contract Compliance Regulations issued by the Pennsylvania Human Relations Commission, 16 Pa.Code Ch. 49."

Although by statute the Department's agreements with appellee hospitals are to be reduced to writing, see Public Welfare Code, § 443.1, supra, no independent requirement of a writing is contained in the Contract Compliance Regulations.

The regulations place responsibility to impose sanctions upon both the contracting agency and the Human Relations Commission. 16 Pa.Code § 49.71(a). Permissible sanctions include: (1) publication of the names of contractors or unions which have failed to comply; (2) recommendation to the Attorney General that appropriate enforcement proceedings be commenced; (3) recommendation to law enforcement officials that criminal proceedings be brought for the willful furnishing of false information; (4) fixed-period suspension of remaining obligations under the contract pending compliance; and (5) disqualification of the violating party from entering into other contracts with state agencies.

## II

Agreements for inpatient hospital care between the Department of Public Welfare and appellee hospitals became effective on July 1, 1977. The hospitals agreed to

"[c]ertify that in the performance of this agreement there will be no discrimination against any employee or other person on account of race, color, sex, religious creed, ancestry, age or national origin and that the Commonwealth upon receipt of proof of such discrimination shall have the right to cancel this Agreement."

However, the agreements did not include the mandatory non-discrimination clause specified by the Human Relations Commission's regulations.

In July of 1979, the Department notified the hospitals that the agreements then in effect would be terminated as of the end of the following month. After postponements of the date for termination, the Department furnished the hospitals with copies of the proposed new agreement containing a complete non-discrimination clause as required by the regulations.

The new agreement was to be executed no later than November 20, 1979, the scheduled date for expiration of the existing agreements. Although the bulk of the agreement was satisfactory to the hospitals, the hospitals objected to the inclusion of the non-discrimination clause. In adminis-

trative proceedings before the Division of Provider Participation, Bureau of Medical Assistance, appellee hospitals challenged the inclusion of the non-discrimination clause in the proposed agreement. On November 14, 1979, the hospitals were advised that their request for a supersedeas would be heard on November 21, one day after the date on which the existing agreements were scheduled to expire. The following day appellee hospitals and appellee Hospital Association filed a petition for review in the Commonwealth Court, challenging the clause primarily on the ground that the regulations of the Human Relations Commission were promulgated without statutory authority. Accompanying the petition was a motion for the preliminary injunction presently at issue.

On November 16, after oral argument of counsel for both the hospitals and the Department, the Commonwealth Court (Bowman, P. J.) temporarily enjoined the Department from terminating the existing agreements and from implementing any portion of the non-discrimination clause which it had sought to include in the proposed agreements. The court also scheduled a date for a hearing on the continuation of the temporary injunction.

The court held a hearing on December 10, 1979. Before that hearing was held, appellee hospitals agreed to all of the provisions of the new agreements except for the non-discrimination clause.

At the hearing, appellee hospitals sought to justify temporary relief on the ground that the non-discrimination clause would involve extensive administrative costs. Appellees especially sought to demonstrate the perceived evils of the clause's "subcontractor" requirement, which obliges a contractor to "include the provisions of this non-discrimination clause in every subcontract, so that such provisions will be binding upon each subcontractor." 16 Pa.Code § 49.101(d) ¶ 9 (See supra text and Appendix). A materials management director of the Harrisburg Hospital testified that present procurement procedure, substantially accomplished by oral communications with vendors, would be dramatically

affected by the new clause. The materials management director predicted that the clause would require his hospital to employ a full-time clerk, to conduct its operations at a slower pace, to increase its inventory, to expend more money for inventory storage, and to pay more in postage costs. All of these predictions were based on appellees' assumption that the clause would require the replacement of the present process of oral communications with written contracts containing the entire non-discrimination clause.

The court found credible the evidence relating to the effect of the clause on procurements:

> "[T]o require [appellee hospitals] to undertake a total revision of their purchasing practices and procedures with respect to vendors, involving purchase orders in multimillions of dollars annually and literally thousands of vendors, according to the evidence, will involve considerable additional expense to petitioner hospitals, disruption of the purchase and supply of essential materials, medicines and medical supplies, and requires a conclusion that immediate and irreparable harm will be visited upon petitioner hospitals in putting into effect the vendor contract compliance provisions of this revised in-patient hospital agreement."

Thus, on December 19, 1979, the Commonwealth Court continued the previously-entered temporary injunction as it related to the subcontractor clause of paragraph 9.

The court also continued the temporary relief relating to document production (¶ 7), recruitment of minority subcontractors (¶ 8), and the meaning of terms (¶ 10). The court did so despite its express rejection of appellee hospitals' contention that preliminary relief was necessary to avoid harm caused by implementation of any affirmative action programs required by the proposed agreements:

> "the evidence presented by petitioners [(appellee hospitals)] with respect to increased administrative costs occasioned by the initial implementation of affirmative action and affirmative action programs is insufficient to warrant a conclusion that petitioners would be immediately and

irreparably harmed in taking steps to initiate such actions and programs."

In all other respects the previously-entered preliminary injunction was dissolved.

Two days after the Commonwealth Court entered its decree modifying the previous preliminary injunction, appellee hospitals filed an amended petition for review. Unlike the previous petition, the amended petition named the Human Relations Commission as a respondent along with the previously-named Department of Public Welfare. The amended petition also elaborated upon the previous petition's rather general allegation of irreparable injury.

The Department timely filed notice of the present appeal. Thereafter, pursuant to a stipulation of the parties, the Commonwealth Court entered a decree discontinuing and dismissing the action as to the Hospital Association and all of the 175 hospitals except for Parkview and Tri-County. The court also dissolved the preliminary injunction except as it relates to these two hospitals. Since this development, the Commonwealth Court has overruled the Department's preliminary objections to the two hospitals' amended petition for review. *Parkview Hospital v. Commonwealth, Department of Public Welfare*, 56 Pa.Cmwlth. 218, 424 A.2d 599 (1981).

### III

■ "[A] preliminary injunction is somewhat like a judgment and execution before trial . . . ." *Herman v. Dixon*, 393 Pa. 33, 36, 141 A.2d 576, 577 (1958). Thus, although an application for such relief is addressed to a court's equitable discretion, the relief should issue only where

"there is an urgent necessity to avoid injury which cannot be compensated for by damages and should never be awarded except when the rights of the plaintiff are clear. Also, it should in no event ever be issued unless greater injury will be done by refusing it than in granting it."

Id., 393 Pa. at 36–37, 141 A.2d at 577. Accord, e. g., *Bell v. Thornburgh*, 491 Pa. 263, 267, 420 A.2d 443, 445 (1980);

*Berkowitz v. Wilbar,* 416 Pa. 369, 206 A.2d 280 (1965); *Keystone Guild, Inc. v. Pappas,* 399 Pa. 46, 159 A.2d 681 (1960); 5 Goodrich-Amram § 1531 (a):1 (1977).

■ Despite these stringent standards, a party seeking appellate relief from a decree granting (or refusing) a preliminary injunction, instead of "waiting for a final determination on the merits," incurs what has been termed an "additional burden." *Parker v. Philadelphia,* 391 Pa. 242, 247, 137 A.2d 343, 346 (1958). Appellate review is limited to whether the action of the court had "any apparently reasonable grounds." *Bell v. Thornburgh,* supra. Accord, e. g., *South Fayette Township v. Commonwealth of Pennsylvania,* 477 Pa. 574, 579, 385 A.2d 344, 347 (1978); *McMullan v. Wohlgemuth,* 444 Pa. 563, 570, 281 A.2d 836, 840 (1971); *Lindenfelser v. Lindenfelser,* 385 Pa. 342, 343, 123 A.2d 626, 627 (1956); 5 Goodrich-Amram 2d, supra, at §§ 1531(e):2 & 1531(e):3; 9 Std.Pa.Practice Ch. 40 (Hearing and Determination of Appeal), § 235 at p. 566 (rev. ed. 1962). Compare *Lutz Appellate Printers, Inc. v. Dep't of Property & Supplies,* 472 Pa. 28, 370 A.2d 1210 (1977) *(Lutz I),* with *Lutz II,* 485 Pa. 559, 403 A.2d 530 (1979) (court's interpretation of statute may provide "apparently reasonable grounds" for denial of preliminary injunction even though interpretation is rejected on subsequent appeal from determination of merits).

■ With these considerations in mind, it must be obvious that the determination of the single judge of the Commonwealth Court relating to paragraphs 7, 8, and 10 of the non-discrimination clause (document production, recruitment of minority subcontractors, and meaning of terms) cannot stand. At the evidentiary hearing, the petitioning hospitals attempted to establish that harm would befall them upon the implementation of the various provisions of the non-discrimination clause. The court was persuaded that paragraph 9, mandating the inclusion of the non-discrimination clause in subcontracts, would impose a burden upon the hospitals by requiring a "total revision of their purchasing practices and procedures with respect to vendors. . . ." However, the court also rejected the hospitals' claim that the

"increase in administrative costs occasioned by the initial implementation of affirmative action and affirmative action programs" justified a finding of immediate and irreparable harm. In light of this latter determination, not challenged on this appeal, there can be no basis for a determination of the requisite harm with respect to paragraphs 7, 8, and 10.

So too, the court's determination with respect to the subcontract-inclusion requirement of paragraph 9 is fatally flawed. The testimony offered by the petitioning hospitals was premised on the assumption that paragraph 9 would require the hospitals to reduce their previously oral agreements to writings which include the non-discrimination clause. However, this assumption has not the slightest trace of support—statutory, regulatory, or otherwise. Indeed, there is every reason to believe that the requirement of paragraph 9 can easily be met by informal procedures between the hospitals and their subcontractors.*

Absent a record satisfactorily establishing the requisite immediate and irreparable harm, there is no basis for concluding that appellees are in need of interim relief. The preliminary injunction, therefore, must be set aside.

Decree of the Commonwealth Court vacated and motion for preliminary injunction dismissed. Each party pay own costs.

FLAHERTY, J., joins the opinion with the understanding that the Court is not passing on the propriety of every aspect of the Appendix.

O'BRIEN, C. J., and WILKINSON, J., did not participate in the consideration or decision of this case.

## APPENDIX

### NON–DISCRIMINATION CLAUSE

During the term of this contract, Contractor agrees as follows:

---

* The fact that 173 hospitals of the original petitioners are complying further supports the conclusion that there is no immediate and irreparable harm.

(1) Contractor shall not discriminate against any employe, applicant for employment, independent contractor or any other person because of race, color, religious creed, ancestry, national origin, age or sex.

Contractor shall take affirmative action to ensure that applicants are employed, and that employes or agents are treated during employment, without regard to their race, color, religious creed, ancestry, national origin, age or sex. Such affirmative action shall include, but is not limited to, the following: Employment, upgrading, demotion, or transfer; recruitment or recruitment advertising; layoff or termination; rates of pay or other forms of compensation; and selection for training.

Contractor shall post in conspicuous places, available to employes, agents, applicants for employment and other persons, a notice to be provided by the contracting agency setting forth the provisions of this non-discrimination clause.

(2) Contractor shall in advertisements or requests for employment placed by it or on its behalf state all qualified applicants will receive consideration for employment without regard to race, color, religious creed, ancestry, national origin, age or sex.

(3) Contractor shall send each labor union or workers' representative with which it has a collective bargaining agreement or other contract or understanding, a notice advising said labor union or workers' representative of its commitment to this non-discrimination clause. Similar notice shall be sent to every other source of recruitment regularly utilized by Contractor.

(4) It shall be no defense to a finding of noncompliance with the Contract Compliance Regulations issued by the Pennsylvania Human Relations Commission or this non-discrimination clause that Contractor had delegated some of its employment practices to any union, training program or other source of recruitment which prevents it from meeting its obligations. However, if the evidence indicates that the Contractor was not on notice of the third-party discrimina-

tion or made a good faith effort to correct it, such factor shall be considered in mitigation in determining appropriate sanctions.

(5) Where the practices of a union or of any training program or other source of recruitment will result in the exclusion of minority group persons, so that Contractor will be unable to meet its obligations under the Contract Compliance Regulations issued by the Pennsylvania Human Relations Commission, or this nondiscrimination clause, Contractor shall then employ and fill vacancies through other nondiscriminatory employment procedures.

(6) Contractor shall comply with the Contract Compliance Regulations of the Pennsylvania Human Relations Commission, 16 Pa.Code Chapter 49 and with all laws prohibiting discrimination in hiring or employment opportunities. In the event of Contractor's noncompliance with the non-discrimination clause of this contract or with any such laws, this contract may, after hearing and adjudication, be terminated or suspended, in whole or in part, and Contractor may be declared temporarily ineligible for further Commonwealth contracts, and such other sanctions may be imposed and remedies invoked as provided by the Contract Compliance Regulations.

(7) Contractor shall furnish all necessary employment documents and records to, and permit access to its books, records and accounts by, the contracting agency and the Human Relations Commission, for purposes of investigation to ascertain compliance with the provisions of the Contract Compliance Regulations, pursuant to § 49.35 of these Regulations. If Contractor does not possess documents or records reflecting the necessary information requested, it shall furnish such information on reporting forms supplied by the contracting agency or the Commission.

(8) Contractor shall actively recruit minority subcontractors or subcontractors with substantial minority representation among their employes.

(9) Contractor shall include the provisions of this non-discrimination clause in every subcontract, so that such provisions will be binding upon each subcontractor.

(10) The terms used in this nondiscrimination clause shall have the same meaning as in the Contract Compliance Regulations issued by the Pennsylvania Human Relations Commission, 16 Pa.Code Ch. 49.

(11) Contractor obligations under this clause are limited to the Contractor's facilities within Pennsylvania, or, where the contract is for purchase of goods manufactured outside of Pennsylvania, the facilities at which such goods are actually produced.