436 A.2d 125

Jaime SINGZON, M. D., Edward V. Twiggar, II, M. D., David L. Hoffman, Harold E. Thomas, James P. Kelley, Debra L. Price and Leonard A. Slodysko, Appellants,

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF PUBLIC WELFARE, Helen O'Bannon, Secretary of the Department of Public Welfare.

Supreme Court of Pennsylvania.

Argued May 20, 1981.

Decided Sept. 24, 1981.

Michael I. Levin, Harrisburg, for appellants.

Allen Warshaw, David H. Allshouse, Deputy Attys. Gen., for appellees.

Before ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION

LARSEN, Justice.

In early March, 1980, the Department of Public Welfare (DPW) announced the reduction of the nursing staff at Shamokin State General Hospital (SSGH) located in Shamokin, Pennsylvania. Appellants filed a petition for review with the Commonwealth Court on April 15, 1980 asking that Court to "set aside the decisions and plan" of respondents DPW and Helen O'Bannon, Secretary of DPW (appellees herein).

On April 24, 1980, appellants filed an application for a preliminary injunction requesting the Commonwealth Court to preliminarily enjoin appellees from implementing the announced reduction in staff. An evidentiary hearing on this application was held on May 15, 1980 before the Honora-

ble Robert W. Williams, Jr. who, at the conclusion of the hearing, issued an order from the bench denying the application. This denial was appealed to this Court. (A written opinion was filed by Judge Williams on September 30, 1980, pursuant to Rule 1925 of the Pennsylvania Rules of Appellate Procedure).

Appellants also filed an application with Commonwealth Court on May 22, 1980 seeking an injunction or stay of implementation of the DPW decision pending the determination of the appeal from the May 15, 1980 order but, on June 5, 1980, Justices Robert N. C. Nix, Jr. and Bruce W. Kauffman of this Court issued an order which stayed the DPW determination during the pendency of this appeal.

Appellants (petitioners below) are two SSGH staff physicians, (Drs. Jaime Singzon and Edward V. Twiggar, II), one nurse whose employment is directly affected by the planned staff reduction (Debra L. Price) and four area residents (David L. Hoffman, Harold E. Thomas, James P. Kelley, and Leonard A. Slodysko). Their application for preliminary injunction alleged, essentially, that appellees acted either without authority or in an arbitrary, capricious or bad faith manner, and that the proposed staff reduction posed an immediate threat of irreparable injury to the health, safety and welfare of patients and prospective patients at SSGH. Judge Williams concluded that the latter allegation—immediate threat of irreparable injury—was not supported by the evidence adduced at the hearing and so denied the injunction sought. We affirm.

The standards of appellate review or the grant or denial of a preliminary injunction have often been reiterated by this Court. The litany proceeds as follows:

As a preliminary consideration, we recognize that on an appeal from the grant or denial of a preliminary injunction, we do not inquire into the merits of the controversy, but only examine the record to determine if there were *any apparently reasonable grounds* for the action of the court below. Only if it is plain that *no grounds exist to support the decree or that the rule of law relied upon was*

*palpably erroneous or misapplied* will we interfere with the decision of the Chancellor. *Intraworld Inc. v. Girard Trust Bank,* 461 Pa. 343, 336 A.2d 316 (1975); *Credit Alliance Corp. v. Philadelphia Minit-Man Car Wash Corp.,* 450 Pa. 367, 301 A.2d 816 (1973); *Zebra v. Pittsburgh School District,* 449 Pa. 432, 296 A.2d 748 (1972). "In order to sustain a preliminary injunction, *the plaintiff's right to relief must be clear, the need for relief must be immediate, and the injury must be irreparable if the injunction is not granted." Zebra v. Pittsburgh School District,* 449 Pa. at 437, 296 A.2d at 750. (emphasis added). *Roberts v. School District of Scranton,* 462 Pa. 464, 469, 341 A.2d 475, 478 (1975). (emphasis added).

*Bell v. Thornburgh,* 491 Pa. 263, 267–68, 420 A.2d 443, 445 (1980). (emphasis added). The "essential prerequisites" for a preliminary injunction are sometimes stated in the following manner:

[F]irst, that it is necessary to prevent immediate and irreparable harm which could not be compensated by damages; second, that greater injury would result by refusing it than by granting it; and third, that it properly restores the parties to their status as it existed immediately prior to the alleged wrongful conduct. (citation omitted). Even more essential, however, is the determination that the activity sought to be restrained is actionable, and that the injunction issued is reasonably suited to abate such activity. And unless the plaintiff's right is clear and the wrong is manifest, a preliminary injunction will not generally be awarded: *Keystone Guild, Inc. v. Pappas,* 399 Pa. 46, 159 A.2d 681 (1960), and *Herman v. Dixon,* 393 Pa. 33, 141 A.2d 576 (1958).

*John G. Bryant Co. v. Sling Testing & Repair, Inc.,* 471 Pa. 1, 7, 369 A.2d 1164, 1167 (1977); *New Castle Orthopedic Assoc. v. Burns,* 481 Pa. 460, 464, 392 A.2d 1383, 1385 (1978).

█ Obviously, the proponent of a preliminary injunction faces a heavy burden of persuasion and, where the lower court has not been persuaded and has denied the injunction request, the proponent must also overcome the narrow scope

of appellate review which will uphold that denial if there were "any apparently reasonable grounds." In the instant case, the record clearly supports the action of the Commonwealth Court.

The cutbacks in nursing staff, if implemented, would result in the elimination of one of SSGH's medical/surgical units (15 beds) and the entire obstetrical/maternity unit (13 beds). Appellants asserted in their petition for review, and attempted to demonstrate at the hearing, that the elimination of their units would cause certain specific injuries. First, they asserted that the elimination of the obstetrical/maternity unit would prove dangerous to expectant mothers for two reasons—the "extended" drive (travel time) to alternative facilities and the inadequacy of the Ashland State General Hospital, the closest alternative facility, which would, according to a witness, Dr. Peter W. Ross, Jr., provide insufficient protection against the risk of infection. Second, appellants maintained that the remaining medical/surgical units would be inadequately staffed, threatening the health, safety and welfare of the patients there. Third, they argued that the reduction would reduce, by furlough, one member of the three member nurse anesthetist staff presently providing anesthesia at the hospital. This, they claim, would severely hinder SSGH's ability to perform emergency services. Finally, appellants contended that the reduction in the total number of rooms in the hospital would impede its ability to deal with infectious outbreaks.

The record belies appellants' representation that these assertions have been demonstrated by "undisputed" testimony at the hearing. Expectant mothers have access to three other facilities in the area which are within 30 minutes driving time of SSGH—Ashland State General Hospital, Sunbury Hospital and the Geisinger Community Center. Some prospective SSGH patients are undoubtedly closer to one of these facilities than to SSGH, and, in case of emergencies, SSGH would remain equipped to provide comprehensive emergency obstetrical services. And, Dr. Ross' res-

ervations due to the risk of infection at Ashland (because of the presence of other types of patients on the maternity floor there) was undermined by the fact that he continued to be affiliated with Ashland and has delivered numerous babies there without complication. Moreover, Ashland maintains full accreditation by the Joint Commission on Accreditation of Hospitals.

Concerning, the inadequate staffing on the medical/surgical units, appellants introduced much testimony to the effect that they were already understaffed, and that furloughs planned in compliance with the staff reduction would further reduce the staffing of that unit to a dangerous level. However, the director of nursing at SSGH, Helen Wahofky, admitted that personnel could be shifted from the units which were being eliminated to the remaining medical/surgical units; thus, adequate staffing of the operational units would be provided.

As to the reduction in the nurse anesthetist staff by one member, the nurse anesthetist whose full-time position would be abolished would remain at the hospital as a nurse and would be available during emergency situations. Further, an anesthesiologist has been retained under contract with DPW to provide consultation and, when necessary, to direct care at the hospital.

Finally, regarding the risks of the spread of infection due to the elimination of rooms, the testimony supports the opposite inference, i. e., that the elimination of the beds will reduce the risk. As presently planned, the medical/surgical unit to be closed is an "open" (no separation between patients) unit and the services previously provided there will be transferred to the present location of the obstetrical unit. The transfer will increase the number of private and semi-private rooms available for medical/surgical patients and, accordingly, improve the hospital's capacity to isolate patients.

It is clear from our review of the record that the lower court had eminently reasonable grounds for concluding that appellants had failed to meet the first criterion for the

issuance of a preliminary injunction. While no one wishes to see a hospital in which one works or receives services reduce its capabilities, the record supports Judge Williams' findings that the announced staff reduction at SSGH poses no immediate threat to the health, safety and welfare of the patients.

As the first prerequisite to the granting of a preliminary injunction has not been met, there is no need to address the others; nor need we address appellants' contentions that DPW acted without authority or that, if it acted with authority, it did so arbitrarily, capriciously and in bad faith. We note only that a preliminary examination of the statutory authority advanced in behalf of such DPW authority, while not free from all doubt does offer support for the action taken with respect to SSGH.[1] Without deciding the issue on its merits, this authority renders appellants' right to relief far from clear, and the wrong they attribute to appellees far from manifest.

As to the allegation of arbitrariness and bad faith, the lower court stated:

> Evidence of statistical data and studies of area health facilities examined by the Department of Public Welfare prior to its decision supported the refusal of this Court to find that the Department acted in a capricious or unreasonable manner, or that the decision to reduce the number of nurses at Shamokin State General Hospital was made illegally or in bad faith."

This conclusion also finds support in the record.

From the foregoing, it is apparent that the lower court had reasonable grounds for concluding that appellants had failed to meet their burden of proving the necessity of a preliminary injunction. The order of the Commonwealth Court is, therefore, affirmed.

1. Relevant statutory provisions include sections 301, 302, 303, 316, 901 and 902 of the Public Welfare Code, 62 P.S. §§ 301, 302, 303, 316, 901 and 902 (1968).

ROBERTS, J., filed a concurring opinion in which NIX, J., joins.

O'BRIEN, C. J., and WILKINSON, J., did not participate in the consideration or decision of this case.

ROBERTS, Justice, concurring.

I agree that there is no basis on this record to disturb the order of the Commonwealth Court denying a preliminary injunction. The record reflects the existence of apparently reasonable grounds for the court's conclusion that appellants failed to establish immediate and irreparable injury not compensable by an action at law. See *Hospital Ass'n of Pennsylvania v. Commonwealth, Dep't of Public Welfare,* 495 Pa. 225, 433 A.2d 450 (1981); *Lindenfelser v. Lindenfelser,* 385 Pa. 342, 343, 123 A.2d 626, 627 (1956); 5 Goodrich-Amram 2d §§ 1531(e):2 & 1531(e):3 (1977); 9 Std.Pa.Practice Ch. 40 (Hearing and Determination of Appeal), § 235 at p. 566 (rev.ed.1962).

NIX, J., joins in this concurring opinion.