531 A.2d 507

**EAST HILLS TV & SPORTING**

v.

**Garry DIBERT t/d/b/a Maxum Consumer Services and Summit Bank (Two Cases).**

**Appeal of Garry DIBERT t/d/b/a Maxum Consumer Services (Two Cases).**

Superior Court of Pennsylvania.

Argued March 18, 1987.

Filed Sept. 24, 1987.

David J. Weaver, Johnstown, for appellant.

Richard J. Russell, Johnstown, for East Hills TV, appellee.

Before ROWLEY, DEL SOLE and TAMILIA, JJ.

ROWLEY, Judge:

These are consolidated appeals from orders of the Court of Common Pleas, Cambria County, directing that Summit Bank issue appellee, East Hills TV & Sporting, a check from the account of appellant in the amount of $38,940. We affirm.

Appellee, East Hills TV and Sporting, entered into an oral agreement with appellant, Garry Dibert, t/d/b/a Maxum Consumer Services, for the purchase of a number of video cassette recorders. According to appellant, the recorders were to be obtained by him at a bankruptcy sale in Connect-

icut. Appellee paid appellant the agreed price for the recorders. Shortly thereafter, upon the basis of information received to the effect that appellant might be unable or unwilling to perform the agreement, appellee instituted a complaint in equity to rescind the contract, alleging that appellant had misrepresented his ability to obtain the recorders in the agreed manner. Simultaneously, appellee filed a motion for special relief in the form of a preliminary injunction requesting that the court enjoin appellant from spending or utilizing any funds paid to him by appellee. The funds were on deposit in appellant's business account at Summit Bank.

Pursuant to appellee's motion, the trial court on May 8, 1986, entered a preliminary injunction enjoining appellant from spending or utilizing any of the funds paid him by appellee. Appellee was directed to file a bond in the amount of $20,000. The court further ordered that Summit Bank be "enjoined from honoring any request for withdrawal of [the funds at issue]."

A hearing to consider continuing the preliminary injunction was held on May 13, 1986. Edward C. Reed, owner of appellee East Hills TV & Sporting, testified at this proceeding but defendant/appellant Garry Dibert failed to appear. At the conclusion of the hearing, an order was entered by the trial judge, the Honorable Eugene A. Creany, continuing the preliminary injunction until May 29, 1986, to allow appellant another opportunity to appear and be heard.

All parties appeared on May 29, 1986. By order of court on May 29, 1986, the court made "the injunction previously issued permanent," and enjoined the appellant "from interfering in any way" with appellee's money that was on deposit in appellant's account in Summit Bank. Additionally, Judge Creany ordered Summit Bank to turn over to appellee the sum of $38,940 from appellant's account.

A further hearing was held on June 9, 1986, pursuant to a petition for contempt filed by appellee against Summit Bank for refusing to pay the funds to appellee as directed by the order of May 29, 1986. At that hearing appellant presented

a motion to quash, preliminary objections, a motion to strike, an answer containing a counterclaim, a motion for reconsideration, and a motion to increase the bond. The trial court addressed all of these matters in its order of June 9, 1986.[1]

The following day, June 10, 1986, the trial court entered a revised order, again directing Summit Bank to pay the funds at issue to appellee. The order also required appellee to post a bond in the amount of $45,000.

On June 16, 1986, appellant filed a notice of appeal from the orders entered on May 29, 1986, June 9, 1986, and June 10, 1986. On August 18, 1986, in response to appellee's Motion to Strike the Notice of Appeal, the Superior Court ordered appellant to file a separate notice of appeal, *nunc pro tunc* from the June 10 order, struck the appeal as to the June 9 order which is interlocutory, and directed that the appeal from the May 29 order remain docketed at No. 908 Pittsburgh 1986, and that the *nunc pro tunc* appeal from the June 10 order be docketed at a separate number (No. 1243 Pittsburgh 1986). These two appeals were consolidated. Thus, the only two orders that are before us for review are those of May 29 and June 10.

Appellant raises four issues on appeal: (1) whether the trial court erred in denying, on *June 9, 1986,* his motion to quash based on allegations that appellant's business agent was under the control of police officers at the time he

1. In his motion to quash, appellant challenged the validity of service of process. The trial court found that service at appellant's place of business had been proper. Appellant's preliminary objections alleged that appellee had failed to exhaust a statutory remedy. The court found that the UCC was not the only remedy available, and on that basis, dismissed the preliminary objections.

Appellant, in his motion to strike, sought to have paragraphs nine (9) through twelve (12) of the complaint stricken for allegedly raising "scandalous and impertinent matter" (criminal charges). The judge found that the pleadings conformed to law.

The court noted in its June 9, 1986 order that the counterclaim would be addressed at a final hearing. The motion for reconsideration was denied for reasons given at the hearing on May 29, 1986. The motion to increase bond was granted. New bond was set at $45,000.

received service of process on behalf of the appellant, and those police officers allegedly instructed the agent not to notify appellant of the pendency of the proceedings instituted against him; (2) whether the trial court properly held on *June 9, 1986* that a court sitting in equity has jurisdiction over a matter when there is an adequate remedy at law; (3) whether the trial court erred in denying on *June 9, 1986* the appellant's preliminary objections to allow scandalous and impertinent material to mingle with the controversy; and (4) whether the court can direct a summary disposition of funds at a hearing held to determine whether a preliminary ex parte injunction should be continued. The first three issues relate to the order of June 9. Because the appeal from that order was stricken by our Court as interlocutory,[2] those issues are not before us at this time (see footnotes 1, 2 and 3 to this opinion). However, appellant's fourth issue, which relates to the orders of May 29 and June 10, is properly before us.

Appellant argues that the trial court's decision to order Summit Bank to pay $38,940 from appellant's business account to appellee went beyond the bounds of what the trial court statutorily[3] was permitted to order and violated appellant's right to due process. He contends that he should have been permitted to conduct discovery, introduce documentary evidence and exhibits, call witnesses, and present a case in an orderly "at-law" fashion. Appellee argues that the court was attempting merely to maintain the status quo between the parties pending a decision on the merits. Appellee insists that its filing of the $45,000 bond is sufficient to protect appellant's interests pending the outcome of the case.

■ Appellate review of a decree granting a preliminary injunction is limited to whether the action of the court has "any apparently reasonable grounds." *Hospital Associa-*

2. 908 Pittsburgh, 1986, per curiam order of August 13, 1986.

3. Appellant argues that Pa.R.C.P. 1531(e) limits the court to dissolving, continuing or modifying the injunction, and in no event is the court authorized to order that monies be returned to a party.

*tion of Pennsylvania v. Commonwealth Department of Public Welfare*, 495 Pa. 225, 433 A.2d 450 (1981). The purpose of a preliminary injunction is to preserve the status quo as it existed before the acts complained of, and thereby prevent irreparable injury or gross injustice. *Slott v. Plastic Fabricators, Inc.*, 402 Pa. 433, 167 A.2d 306 (1961). The act complained of in the instant action is appellant's allegedly fraudulent representation that he could obtain video cassette recorders through a bankruptcy sale in the state of Connecticut. The "status quo" in the instant action would place appellee's $38,940 in funds back in its own hands, where it was at the time of appellant's representation. The irreparable injury is the potential loss of appellee's funds which are needed to carry on its business.

■ We note at the outset that the issue of whether the trial court had an adequate basis for enjoining appellant from utilizing appellee's funds located in the Summit Bank is not before us. Determination of whether appellee properly rescinded the contract, or is in breach of it, will be made at a later date at the trial level. The only issue addressed on the instant appeal is whether the trial court erred in ordering that appellee's funds on deposit in appellant's account at Summit Bank, which appellant was enjoined from using, be returned to appellee so that appellee's business could continue as a going concern. On that issue counsel for both parties had the opportunity to present, examine and cross-examine witnesses. Mr. Reed, who owns the appellee business, provided testimony at the May 29th hearing that much of his line of credit was tied up in the aborted transaction with the appellant. We conclude that Mr. Reed's testimony provided the necessary "reasonable grounds" upon which the trial court's decision to return the money was based. It is evident that without that money, the business could not continue. The trial court properly increased appellee's bond to cover its potential liability to appellant, and ordered Summit Bank to pay out $38,940 to appellee. Since appellant was lawfully enjoined from using

the funds, he has not been harmed by virtue of the fact that appellee's bond has been substituted for cash.

We affirm the orders of May 29, 1986 and June 10, 1986 insofar as they direct the payment of $38,940 by Summit Bank from appellant's account to appellee. The case is remanded for further proceedings. Jurisdiction is relinquished.