623 A.2d 854

**AMERICAN EXPRESS TRAVEL RELATED SERVICES COMPANY, INC., Appellee,**

**v.**

**George M. LAUGHLIN, Individually and Trading as Best Auto Tag Service, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 27, 1992.

Filed April 23, 1993.

624

Joseph T. Kelley, Jr., Plymouth Meeting, for appellant.
Barry N. Sklar, Jenkintown, for appellee.

Before WIEAND, OLSZEWSKI and HOFFMAN, JJ.

OLSZEWSKI, Judge:

This is an appeal from the Hon. Maureen F. Fitzpatrick's order granting appellee American Express Travel Related Service Company's ["AMEX"] petition for a preliminary injunction. Appellant George M. Laughlin, trading as Best Auto Tag Services ["Laughlin"] contends, for various reasons, that the injunction was improperly granted. We affirm.

Laughlin and AMEX entered into a contractual agreement whereby Laughlin issued money orders on AMEX's behalf. Although the contract permitted Laughlin to charge his cus-

tomers a fee for his services, he received no right to possession or title in any funds he received in exchange for the orders. The contract specifically provides that Laughlin assumed a fiduciary duty as to all funds received on AMEX's behalf:

> 1. Trust Relationship. AMEX appoints Agent [Laughlin] as its agent authorized to sell American Express Money Orders issued by AMEX ("Money Orders") in accordance with the provisions stated herein. Upon execution of this agreement and pursuant to its terms, Agent shall be a trustee and act in a fiduciary capacity with respect to any Money Orders in Agent's possession and Proceeds, as defined in subsection 2(d) hereof. Agent shall account for the money orders and proceeds separate and apart from all other funds and monies of Agent and shall not commingle the Money Orders and Proceeds with these other funds and monies. In the event agent does commingle Money Orders and/or Proceeds with any other funds and/or monies, such other funds and monies shall be deemed to be impressed with a trust with respect thereto. It is expressly understood that Agent does not, by operation of this Agreement, acquire any right, title, or interest of any kind in the Money Orders, the Proceeds, or the AMEX Fee as defined in subsection 3(b) hereof.

Trust Agreement, R.R. 66A.

The relationship between the parties was apparently amicable until AMEX became concerned over Laughlin's "unstable" reporting patterns. AMEX performed an extensive audit in December of 1991, which disclosed that Laughlin had failed to remit over $180,000 in money order proceeds. Shortly thereafter, AMEX filed this equity action alleging, *inter alia*, that Laughlin breached his fiduciary duty by failing to remit the proceeds.

Before Laughlin filed his answer, AMEX filed a motion for a preliminary injunction, asking the court to prevent Laughlin from dissipating, alienating, transferring, concealing or substantially impairing the funds he held pursuant to the trust agreement. The injunction also sought an accounting of the

trust proceeds, and remission of any trust proceeds to AMEX. The trial court held a two-day hearing on the injunction on February 11, and February 24, 1992. The only evidence at the hearing, presented by AMEX, established that AMEX's audits were substantially correct and that Laughlin (through a conversation with AMEX's auditor and a letter signed by Laughlin) tacitly admitted that he had not remitted $193,000 in proceeds to AMEX. The trial judge therefore determined that AMEX's success on the eventual merits was likely and granted the injunction. The injunction was conditioned upon AMEX's posting a $180,000 bond in court.

Laughlin presents numerous arguments on appeal, all of which contend that the injunction, or portions of it, were improperly granted. He argues that the injunction should not have issued in the first place because AMEX had an adequate remedy at law and that AMEX has not shown irreparable injury requiring injunctive relief. He also contends that the trial court abused its discretion in granting an accounting and in requiring Laughlin to remit any proceeds in his possession.

■■■ "Appellate review of a decree granting a preliminary injunction is limited to whether the action of the court has any 'apparently reasonable grounds.' " *East Hills TV and Sporting v. Dibert*, 366 Pa.Super. 455, 459, 531 A.2d 507, 509 (1987) (quoting *Hospital Association of Pennsylvania v. Comm., Dept. of Public Welfare*, 495 Pa. 225, 433 A.2d 450 (1981)). The purpose of a preliminary injunction is to preserve the status quo as it exists or as it existed before the acts complained of, thereby preventing irreparable injury or gross injustice. The injunction should not issue unless there is urgent necessity to prevent injury not compensable by damages. *Maritrans v. Pepper, Hamilton & Scheetz*, 529 Pa. 241, 602 A.2d 1277 (1992). We may reverse the trial judge only if she clearly has abused her discretion. *Id.* We find no such abuse.

■■■ Laughlin argues first that AMEX has an adequate remedy at law and is not suffering irreparable harm. He claims that any arrearages due to AMEX may await judgment

after a hearing on the merits. We disagree. Since Laughlin's relationship with AMEX is that of trustee, rather than debtor, the existence of a remedy at law is irrelevant. Restatement of Trusts (Second), § 199, comment a. Indeed, a trust beneficiary has an option to pursue either equitable or legal relief in an action against a trustee. *Ramsey v. Ramsey*, 351 Pa. 413, 41 A.2d 559 (1945); *see* Restatement of Trusts (Second), § 199.

Here, the trial judge determined that AMEX was likely to succeed in its action against Laughlin, given Laughlin's tacit admissions that he did not remit the funds which he held on AMEX's behalf. The court therefore enjoined him from concealing or dissipating those funds. Moreover, the court held that an injunction in this case is especially appropriate to return the parties to the status quo as it existed prior to Laughlin's alleged breach of his fiduciary duty. The agreement between the parties specifically provides that Laughlin never acquired any interest whatsoever in the funds he received on AMEX's behalf. Without injunctive relief enjoining further breach of Laughlin's fiduciary duty, AMEX would suffer great injustice. Laughlin would be entitled to utilize, or perhaps conceal or destroy, proceeds in which he agreed he had no interest. The trial judge did not abuse her discretion in granting the preliminary injunctive relief.

Laughlin contends next that the trial court abused its discretion in granting the injunction because AMEX cannot identify a trust "res" for which he is responsible. He further argues that AMEX's failure to identify the "res" renders an accounting unnecessary, since AMEX has acquired the necessary information regarding the proceeds through its audits. These arguments rest on the erroneous assumption that the court imposed a constructive trust on Laughlin's assets.

■ As Laughlin correctly notes, a constructive trust arises when a person holding title to property is subject to an equitable duty to convey it to another on the ground that he will be unjustly enriched if he were permitted to retain it. *Kimball v. Barr*, 249 Pa.Super. 420, 378 A.2d 366 (1977). In such cases, the plaintiff must "trace" the trust funds into an identifiable fund which represents the trust property. *City of*

*Philadelphia v. Mancini,* 431 Pa. 355, 246 A.2d 320 (1968). Here, the court did not impose a constructive trust on Laughlin's assets and therefore it is not necessary for AMEX to "trace" the funds which Laughlin received. Instead, the trial court attempted to return the parties to the status quo by compelling Laughlin to conform to the express terms of the trust agreement. In other words, when Laughlin received cash in exchange for a money order, he was required to place the funds in a separate designated account. If he commingled the funds with his personal assets they immediately became trust funds by operation of the agreement. There is nothing "constructive" about the trust, since Laughlin agreed that any money he received for money orders was held on AMEX's behalf. Moreover, AMEX's audit only revealed the amount of funds Laughlin failed to remit, not their location. Only Laughlin knows what he did with the funds. The trial judge therefore properly compelled Laughlin to account for monies received on AMEX's behalf.

■ Finally, Laughlin claims it was an abuse of discretion to require him to remit any trust funds to AMEX. He claims that such repayment is premature and should await resolution of the case on the merits. We disagree. The agreement, as we have repeatedly noted, clearly establishes that all monies received on AMEX's behalf became trust property to which Laughlin had no possessory or legal rights. Thus, the injunction only requires Laughlin to remit proceeds to which he was never entitled. He suffers no harm by remitting these funds and AMEX is assured that it can protect funds which it will likely be awarded. AMEX's posted bond of $180,000 is sufficient to protect Laughlin's interests if he eventually presents a successful defense. *See, East Hills TV and Sporting v. Dibert,* 366 Pa.Super. 455, 531 A.2d 507 (1987).

The preliminary injunction in this case was simply designed to place the parties in the status quo and to protect AMEX from losing funds to which it has proven, preliminarily, it is likely entitled. This is not an abuse of discretion.

The order is affirmed.

WIEAND, Judge, dissenting:

In this appeal we are asked to review a preliminary injunction which enjoined George M. Laughlin, t/a Best Auto Tag Service, from "dissipating" the "value of the Trust Funds as detailed in the terms and provisions of the Trust Agreement" with American Express Travel Related Services Company, Inc. (AMEX). The defendant, by the same preliminary order, was also directed to state an account and "immediately surrender and return to Plaintiff all Trust Funds or assets impressed with a trust in Defendant's possession, custody or control...." A majority of this Court affirms the preliminary order entered by the trial court. In my judgment, however, the preliminary order decided too much, was too broad in its scope and, indeed, constituted an abuse of discretion. The court could properly do nothing more than maintain the status quo until the rights of the parties could be fully litigated.

In May, 1989, AMEX and Laughlin entered into a written agreement by the terms of which Laughlin was to sell money orders for AMEX. The proceeds of these sales, according to the terms of the agreement, were to be deemed trust funds. Laughlin was to act in a fiduciary capacity, and the proceeds from sales of money orders were to be kept separate and apart from other funds held by Laughlin. Specifically, the parties' agreement provided as follows:

1. Trust Relationship. Amex appoints Agent as its agent authorized to sell American Express Money Orders issued by Amex ("Money Orders") in accordance with the provisions stated herein. Upon execution of this Agreement and pursuant to its terms, Agent shall be a trustee and act in a fiduciary capacity with respect to any Money Orders in Agent's possession and Proceeds, as defined in subsection 2(d) hereof. Agent shall account for the Money Orders and Proceeds separate and apart from all other funds and monies of Agent and shall not commingle the Money Orders and Proceeds with these other funds and monies. *In the event Agent does commingle Money Orders and/or Proceeds with any other funds and/or monies, such other funds and monies shall be deemed to be impressed with a trust*

*with respect thereto.* It is expressly understood that Agent does not, by operation of this Agreement, acquire any right, title or interest of any kind in the Money Orders, the Proceeds or the Amex Fee as defined in subsection 3(b) hereof. (emphasis added)

These proceeds were to be remitted to AMEX in accordance with procedures established by other paragraphs of the agreement.

In November, 1991, AMEX became aware that Laughlin was not following the reporting procedures required by the agreement. Therefore, an AMEX representative was dispatched to conduct an audit of Laughlin's books and records. As a result of this audit, it was determined that Laughlin had failed to remit almost one hundred ninety-three thousand ($193,000) dollars which were due AMEX.

On or about January 13, 1992, AMEX commenced an action in equity against Laughlin and requested the trial court to issue a preliminary injunction. When its request was heard by the court on February 11, 1992, AMEX called two witnesses. Jerry Horton, the AMEX employee who had conducted the audit of Laughlin's records, testified that his audit had revealed a shortfall of funds paid to AMEX for money orders sold by Laughlin of approximately one hundred ninety-three thousand ($193,000) dollars. Ginger Waterbury, the manager of the AMEX collection unit, described the AMEX money order system and recited a telephone conversation with Laughlin following the audit in which he had confirmed a failure to submit all funds and had promised to remit monies due. This was further confirmed by a letter to AMEX signed by Laughlin. The hearing concluded before Waterbury could be cross-examined. The court subsequently entered the order from which the present appeal has been taken. Appellant argues that the AMEX claim is for the payment of money damages for which AMEX has an adequate remedy at law. He also contends that the trial court's order, entered after only a preliminary hearing, has the effect of preventing his continuing to do business.

An action for breach of trust is an equitable proceeding, even if money damages are the only remedy sought. *Philadelphia v. Penn Plastering Corp.,* 434 Pa. 122, 253 A.2d 247 (1969); *Ramsey v. Ramsey,* 351 Pa. 413, 41 A.2d 559 (1945); *Commonwealth by Kane v. Hilton,* 24 Pa.Commw. 285, 355 A.2d 841 (1976). "In the exercise of its jurisdiction over trustees and its power to require compliance with, and the performance of the duties and obligations of, a trust, equity will, in a proper case ... decree an injunction for certain purposes, such as to restrain an unauthorized sale or diversion of the trust property. Furthermore, a temporary injunction will lie to freeze the res of an alleged constructive trust upon a showing that the res is in probable danger of dissipation and that there is a reasonable likelihood of success on the merits with respect to the constructive trust claim." 76 Am.Jur.2d, Trusts § 669.

> The purpose of a preliminary injunction is to preserve the status quo as it exists **or previously existed before the acts complained of,** thereby preventing irreparable injury or gross injustice. *Slott v. Plastic Fabricators, Inc.,* 402 Pa. 433, 167 A.2d 306 (1961). A preliminary injunction should issue only where there is urgent necessity to avoid injury which cannot be compensated for by damages. *Independent State Store Union v. Pa. Liquor Control Bd.,* 495 Pa. 145, 432 A.2d 1375 (1981). The court which is to exercise discretion in the matter of issuance of an injunction is the trial court and not the appellate court and the action of the trial court may be reviewed on appeal only in the case of a clear abuse of discretion but not otherwise. *Rick v. Cramp,* 357 Pa. 83, 53 A.2d 84 (1947).

*Maritrans v. Pepper, Hamilton & Scheetz,* 529 Pa. 241, 259, 602 A.2d 1277, 1286 (1992).

The evidence in this case was that the money owed to AMEX by Laughlin had not been kept separate and apart from other assets of Laughlin and, in fact, had been commingled with the general funds by which Laughlin conducted business. The moneys owed AMEX, therefore, no longer constituted a separate trust res. The parties' agreement

provided, if AMEX funds were commingled, that a trust should be impressed on any funds or assets with which the original trust funds had been commingled. In this case, that was all funds needed by Laughlin to conduct his business. Thus, when the trial court entered a preliminary order enjoining Laughlin from "dissipating, transferring, alienating, concealing, substantially impairing the value of the Trust Funds as detailed in the terms and provisions of the Trust Agreement," and directing the immediate surrender of all assets impressed with a trust, it not only rendered a final decision, but it effectively prevented Laughlin from using its funds and assets to engage in future business. In my judgment, this was an abuse of discretion. If a specific trust res were no longer in existence, Laughlin was indebted to AMEX for the shortfall, but the trial court could not enter a preliminary order impressing a trust on all assets of the defendant and preventing his continuing to do business. Moreover, it could not decide the case finally without allowing the defendant to offer a defense.

It was also premature, in my judgment, for the trial court to order appellant preliminarily to render an accounting. The trial court had held only a preliminary hearing; it had not heard from the defense. Indeed, it is questionable whether the defendant had a full opportunity to cross-examine AMEX's second witness. In any event, AMEX had already conducted an audit of appellant's books and records. Therefore, it is not at all clear to me what additional information appellant can be expected to provide.

The record discloses unequivocally that Laughlin is indebted to AMEX for misappropriated funds. Unless Laughlin can show a defense to the claim by AMEX, the trial court will be required to fashion an order requiring repayment. At the present time, however, only a preliminary hearing has been held; the defense has not had an opportunity to be heard. For the trial court to enter an order deciding the merits of the case and granting AMEX full relief after only a preliminary hearing was, in my judgment, improper. I would reverse and remand for further proceedings.