**Fairfield Area School District v. The National Organization for Children Inc.**

C.P. of Adams County, no. 01-S-1008.

*Michael I. Levin* and *Robert L. McQuide,* for plaintiffs.

*Lawrence T. Hoyle, R. David Walk, Jr., Jan Fink Call, Wendi Meltzer, Michael N. Onufrak, Peter J. Mooney* and *Joseph M. Kuffler,* for defendants.

SPICER, *P.J.,* December 11, 2001—

## I

### *Preliminary Objections*

This action was instituted on August 30, 2001, when Fairfield Area School District filed its complaint against defendants. Thereafter, on October 3, 2001, the court conducted a conference with counsel concerning FASD's request for a preliminary injunction. Without vigorous objection by defendants, the court issued an injunction that froze the status quo as it existed at that time. Defendants were not enjoined from presenting an educational service or curriculum but were precluded from enrolling additional students.

This court summarily granted petitions by three other school districts requesting leave to intervene in the action. We saw no prejudice to defendants and acted to avoid lengthy preliminary proceedings. For purposes of simplicity, we will refer to the parties collectively as plaintiffs and defendants, without specifying any particular party.

The court quickly learned that Adams County was not the only place where litigation was occurring. After being informed that the action concerned a charter issued by Morrisville Borough (Bucks County) School District, the court expressed some concerns about venue and was informed that defendants intended to file preliminary objections. During a telephone conference on October

5, 2001, we were told that preliminary objections had been filed. Nonetheless, with the agreement of counsel a hearing was scheduled on the preliminary injunction for October 25, 2001. Later, oral argument was scheduled on preliminary objections for November 16, 2001 and the hearing was continued until November 1, 2001.

We conducted a fairly lengthy hearing that spanned two days. The process would have been much longer, but counsel agreed to and did introduce proceedings from Butler County by reference. Numerous exhibits were received into evidence.

At the conclusion of the hearing, a decision was postponed pending filing of requests for findings and oral argument. We heard argument on both preliminary objections and the request for an injunction.[1]

Defendants advance the following reasons for their preliminary objections:

1. The Action Should Be Dismissed, or in the Alternate, Stayed Pending Resolution of a Commonwealth Court Case Entered to No. 213 M.D. 2001, *Pennsylvania School Boards Inc. v. Charles B. Zogby, Secretary of Education Designate*

It is clear that none of the plaintiff school districts in our case was specifically named as a party in the Commonwealth Court action. Defendants base their plea of

---

1. This judge will retire from the bench at the stroke of midnight, which will be either December 31, 2001 or January 1, 2002, depending upon one's perspective. For guidance of whoever inherits this case, we had the argument transcribed.

abatement[2] on the fact that the complaint pending before Commonwealth Court includes a request for class certification that would include all school districts similarly situated to those involved in the action. However, plaintiffs point out that no certification has occurred. They have not directly participated in that action and are presently not parties to it.

Defendants point out that the same counsel represents school districts in each action and contend that the present action is "an attempt to circumvent the unfavorable May 11, 2001 ruling in the Commonwealth Court action, which denied the school districts' petition for an injunction." Brief, p. 6. As we point out in footnote two, we may not consider the motives of plaintiffs in ruling on the objection. The parties have stipulated that we are not bound by Judge Morgan's decision in the Commonwealth Court action.

The court concludes that defendants are not entitled to abate this action. We have already expended consid-

---

2. One of the more interesting discussions that we have read about lis pendens appears in *Davis Cookie Co. Inc. v. Wasley,* 389 Pa. Super. 112, 566 A.2d 870 (1989). We read that the plea is based upon an ancient maxim "nemo debet bis vexari pro una et eadem cause" (no man shall be vexed twice for the same cause of action). 389 Pa. Super. at 119, 566 A.2d at 873. The full name of the plea is lis alibi pendens. That decision makes it clear that an action may be dismissed because of an earlier proceeding unless both suits involved the same parties (acting in the same legal capacity), the same cause of action (with due regard to common-law distinctions between contract, trespass and equity actions), the same rights asserted and the same relief requested. Unlike federal law, Pennsylvania cannot consider judicial economy and motivations of the parties unless all required common-law unities are present.

erable judicial resources and see no justification for a stay in this action.

### 2. The Action Should Be Dismissed Under Pa.R.C.P. 1028(a)(4) Because It Constitutes an Impermissible Collateral Attack on the Grant of a Charter by Morrisville School District and Because Plaintiffs Have Not Exhausted All Administrative Remedies

Defendants have provided a copy of Commonwealth Court's slip memorandum opinion in *Mosaica Academy Charter School v. Commonwealth of Pennsylvania, Department of Education,* no. 803 M.D. 1998, in which that court stated:

"Additionally, the General Assembly has created and vested the Charter School Appeal Board with the exclusive authority to review an appeal by a charter school applicant or by the board of trustees of an existing charter school of a decision made by the local board of directors not to grant a charter. 24 P.S. §17-1717-A(i)(1). The Charter School Law is silent regarding whether there can be an appeal from a local school board's decision to grant a charter school application. Concomitantly, the Charter School Law does not detail the prerequisite steps necessary to appeal the grant of a charter school application." *Id.* at 8.

The Commonwealth Court went on to suggest that (a) sole discretion as to granting, denying or revocation of a charter rests with the school district defined as the local district acting upon the charter; (b) other school districts may not interfere in that decision; (c) the sole remedy is

to attend meetings of the chartering school districts and request relief.[3]

Although a memorandum opinion is not binding precedent, it certainly gives us pause concerning plaintiffs' request that we declare the charter invalid. We may and do disagree with suggestions that the legislature has denied access to the courts by failing to provide for judicial review. Frankly, we cannot believe the legislature intended what we consider an absurd result, that is to empower each and every one of the 501 school districts in this Commonwealth to establish itself as the exclusive board of appeals from its own decision to grant a charter. This would mean that even when the grant of a charter clearly contravenes the law, the other 500 districts would be forced to journey to that local mecca and present their grievances.

It is also interesting that the Act provides for no consequence when an applicant fails to appeal a rejection of a charter application. Although defendants' applications for a charter in Philadelphia and elsewhere were denied, defendants have nonetheless enrolled students from those school districts.

Members of the Morrisville Borough School Board are doubtlessly fine people, but can hardly be considered motivated to police defendants' performance. Un-

---

3. Interestingly, the Charter School Law, in section 17-1720-A provides that "[t]his written charter shall be legally binding on both the local board of school directors of a school district and the charter school's board of directors." The law does not expressly make the charter binding on other school districts that did not participate in the chartering process. Arguably, this statutory enables plaintiffs to challenge the charter as it applies to Adams County students.

der terms of the charter, that district's children receive defendants' services without costs and the district stands to receive some $600,000 per year from defendants, presumably for administrative expenses incurred in overseeing defendants. We also mention without comment that defendants have rented a building from the district and that plaintiffs have argued that the terms are very favorable to the district.

Nonetheless, our analysis of this case does not require us to declare the Morrisville charter invalid. Although we believe that the Charter School Law applies only to brick and mortar institutions, we take care to limit our consideration to students residing in the four plaintiff districts.

The Charter School Law does not make defendants an instrumentality of the Commonwealth. The clear import of the law is to free some educational services from requirements that bind school districts. Individuals and other entities outside the government sector form the charter school and a privately selected board of directors administers its business. Thus, venue in Adams County is proper under Pa.R.C.P. 1006.

The court dismisses preliminary objections.

## II

### *Adjudication*

Each counsel has filed extensive requests for findings of fact. Although facts can be succinctly stated, courtesy demands that we rule on the requests. We will consider them in the categories presented. Adoption of the requests

merely means that the facts have been established by credible evidence. Relevance to the decision in this case does not necessarily follow.

*Plaintiffs' requests:*

One through nine are adopted, except that "principle" is changed to "principal" throughout. Seven, which states that the court has not yet rendered a decision on the intervention request of Upper Adams School District is rejected. The order granting intervention was signed September 24, 2001.

Ten through 23 are adopted.

Twenty-four and 25 are adopted.

Twenty-six is adopted except that b.vii.7 is modified by substituting "testified" for "misrepresented," and the last sentence is changed to read, "She later corrected this statement by admitting that they were applying with other school districts." Thus we reject implications that the witness willfully lied.

Twenty-seven through 29 are adopted.

Thirty through 33 are adopted.

Thirty-four through 40 are adopted.

Forty-one is rejected. Testimony established that borough school district considers that either all requirements of the charter school agreement have been satisfied or are currently being satisfied.

Forty-two through 44 are adopted.

Forty-five through 56 are adopted except 54 is modified to read as follows:

"(54) Joseph Bard, who was employed by the Department of Education at the time that the Home Schooling Statute was enacted, was involved in the implementation of the home schooling statute. He testified that defendants' program was essentially a home school program. However, defendants provided resources and materials not normally available to home schooled children."

Fifty-seven through 71 are adopted.

Seventy-two and 73 are adopted. Seventy-four is rejected. Seventy-five through 78 are adopted.

Seventy-nine through 93 are adopted, except footnote 12 is not. That footnote states that Mr. Mandel apparently perjured himself in the Butler County proceedings. We are in no position to make such an assumption.

Ninety-four through 105, except 98 are adopted. As to 98, our record does not establish whether Judge Morgan heard or did not hear evidence prior to his ruling. Presumably, he did not due to the nature of his ruling, but we do not have the entire record in that case before us.

We decline to either accept or reject plaintiffs' submitted conclusions of law. Although we agree with most if not all, our decision in this case does not require that we find the Morrisville Borough charter invalid or the Charter School Law unconstitutional.

*Defendants' requests:*

Many of these requests are really matters of statutory interpretation. However, we rule as follows:

One through six are adopted. Seven is rejected. Eight is adopted. Defendants ask us to find, in submission 7,

legislative approval for cyber schools. The mere fact that a bill is pending does not imply such approval. Furthermore, the House Bill 1733 recites that "cyber schools do not fit the requirements of the Charter School Law to have a suitable physical facility and to provide a minimum number of days or hours of instruction."

Nine through 15 are adopted, except 11 and 13 are modified to state that the Department of Education sent an e-mail memorandum, defendants' exhibit 50, to various school districts. The memorandum stated that until court held a specific cyber school to be illegal and that decision was affirmed on appeal "the department believes that school districts should refrain from advising parents that they will violate compulsory attendance laws if they enroll their children in a cyber charter school." Requests 11 and 13 are also clarified to indicate that the Department of Education has neither the power nor the responsibility, except in disbursement of funds and involvement in the Charter School Appeal Board, to determine the validity of a particular charter school.

Sixteen through 20 are adopted. Twenty-one, which states that a charter school may enroll students from outside the district that grants the charter is rejected, as not completely stating applicable law. Twenty-two is rejected as submitted for the same reason. Twenty-three is adopted but changed to read that Einstein, in submitting and pursuing its application for a charter, presumably followed the procedure set forth in 24 P.S. §17-1723-A(e). Twenty-four, 25 and 26 are adopted. Although 27 accurately recites statutory language, that submission is modified to make it clear that no procedure exists in the statute for

enforcing accountability, except to the chartering school district. Twenty-eight and 29 are adopted.

Thirty through 34 are adopted. Thirty-five is rejected. As to 35, it is true that Mr. Severs testified that 21 of 28 teachers were certified, cross-examination brought out that several teachers had stale certificates, and the witness could not say when or if they had been renewed. Although it may be true, as the submission suggests, that staleness is not an issue, this question was not raised in testimony or settled by evidence. Thirty-six and 37 are adopted. As to 38, while it is true that defendants utilize programs in an attempt to ensure that younger students comprehend lessons and requirements, a great deal of responsibility falls to parents or facilitators. Thirty-nine is adopted. All but the first line in 40 is adopted. We reject the finding that it is impossible to know in any learning environment whether a child is paying close attention to what is being taught. Although a teacher may not know all the time whether a student is paying close attention, teachers in classroom settings are usually on top of such problems.

Forty-one through 62 are adopted.

Sixty-three through 67 are adopted. Sixty-eight is adopted to the extent that the charter agreement requires Morrisville Borough School District to monitor defendants and Einstein's board of directors are responsible for monitoring school activities. Sixty-nine through 80 are adopted. We see no need to either reject or adopt 81 in light of prior findings including plaintiffs' number 54. We find there are similarities between defendants' services and home schooling, but that defendants provide

services and materials not normally available to home schooled children.

Eighty-two and 83 are adopted. Eighty-four is adopted in part. The court does not find that Dr. Blust's comment concerning possible violation of mandatory attendance laws violated a PDE directive. There was no directive, merely an e-mail communication that contained suggestions and stated PDE's position with respect to cyber schools. There was no violation.

Eighty-five is rejected as submitted. However, the court finds that students are not in danger of irreparable harm. However, plaintiffs are attempting to enjoin illegal activity.

Generally, the court adopts 86 through 94. However, we emphasize that we are not passing judgment on the legality of the Morrisville charter, nor on defendants' course, presentation, methods of determining attendance and tracking students' progress. Additionally, the record makes it clear that defendants began enrolling students before they were capable of providing educational services and before they had met all requirements of the Charter School Law.

*Defendants' supplemental requests:*

Much of the supplemental requests is argument. One and two are adopted, except we reject the sentence, "In any event, the funding sought by Einstein is provided by the CSL, endorsed by PDE, and serves to educate children of taxpayers not being educated by plaintiffs." It is true, however, that the sum of $80,000 claimed from Upper Adams School District is based upon students not

currently being educated by that school district. Three, involving the definition of unreserved operating fund is irrelevant to this court's decision. Four relates to the number of certified teachers. Certificates may be on file, but are not in evidence. At any rate, this finding is irrelevant for the purposes of this court's order, The same comment applies to five and six.

Seven is adopted. Eight is rejected. Although it is only natural to suspect that Ms. Rothschild hoped to reap a large financial benefit from the endeavor, that fact is immaterial if defendants are otherwise entitled to payment. As to nine, we do not know enough about Ms. Rothschild or her literary contributions to state that she has significant experience in online education. In fact, the industry would appear to be in a formative stage and it is far from clear what "significant experience" means. Ten is rejected as submitted. It is clear that defendants scrambled to organize and prepare a curriculum. We have no idea how closely the Morrisville Borough School District or the Commonwealth will supervise defendants.

Eleven and 12 are adopted. Thirteen and 14 are rejected. Fifteen is adopted to the extent that Tutorbots and Einstein are separate legal entities. Evidence indicates, however, that each is actually controlled by Ms. Rothschild and her family. For example, a teacher, Andrew Goldman testified that he was hired by Howard Mandel. (Trial p. 98.) Otherwise the submission is rejected. Sixteen through 18 are rejected.

Nineteen is technically accurate and is adopted. Twenty is adopted. Twenty-one is adopted except for the comment that evidence adduced in this case establishes that

defendants rushed to obtain a charter and later enrolled students when they were not adequately staffed or prepared to provide necessary educational services. As of the date of the last hearing, a majority of deficiencies had been remedied. Twenty-two through 26 are adopted. Twenty-seven represents a legal argument and is neither adopted nor rejected. Twenty-eight is adopted.

*Discussion and narration of additional
facts pertaining to injunction:*

The General Assembly enacted the Charter School Law by adding a new article to the Public School Code on June 19, 1997. 24 P.S. §17-1701-A et seq. At the time of the enactment, technology was not available for cyber schools and the legislation was geared toward traditional brick and mortar facilities. Although the Act provides that nothing in the Act precludes the use of computer and satellite linkages delivering instruction for students, we can assume that legislators watched the same television depictions of satellite linkages the rest of us viewed. One with which this court is familiar depicted students assembled in a classroom while receiving instruction from a distant, especially gifted teacher. The Act authorized local boards of school directors to issue charters. Although the Act specifically prohibited the grant of charters to entities for profit, it is silent concerning management contracts. Charter schools must be nonsectarian and may not provide religious instruction.

Charters are to be issued for initial terms of not less than three years or more than five years and may be renewed for five-year periods.

Charter schools are not required to obtain authorization from plaintiff-school districts to enroll students. Although local schools are required to pay tuition and provide transportation for charter school students, charter schools are not obligated to notify school districts in advance of expected expenses. In our case, plaintiffs had no idea that they would be obligated to pay tuition when budgets and taxes were established.

While it is true that tuition requests concern students that plaintiffs are not teaching, there is no indication that costs for providing public education for non-charter students has been reduced.

Defendants were not completely organized and were not in a position to provide educational services when they sought and obtained a charter from Morrisville Borough School District. They intended to fund their program through a Department of Education grant, which was not obtained. Although the secretary of education has opined that cyber schools are legal until proven otherwise, he has withheld payments for tuition apparently until litigational dust settles.

Tuition costs payable to a charter school are uniformly set and bear no relationship to the cost of providing education.

It is true that the $80,000 bill submitted to Upper Adams School District can probably be paid without diminishing educational programs or requiring a tax increase. It is also true that defendants stand to earn millions in tuition fees. The court is reminded of a statement made by the late senator from Illinois, Everett Dirksen, which we paraphrase, "a million here and a million there,

and the first thing you know, we're talking about real money."

We hasten to clarify that we make no finding that defendants have done anything improper or illegal. Sometimes profit incentives can be powerful motivators. Nonetheless, should the legislature consider amending the Charter School Law and specifically address cyber schools, it may want to provide for a method of establishing tuition fees based upon expenses of providing tuition. It also may want to consider vesting the Department of Education with the power to charter and supervise cyber schools. The arrangement that defendants have made with Morrisville unfortunately engenders suspicion and doubts that Morrisville has real incentive to properly regulate defendants.

Although we are of the opinion that the Charter School Law authorizes only brick and mortar institutions, we refrain from passing judgment on Morrisville's decision to issue a charter. We make no findings of propriety or impropriety in the chartering process. Instead we consider only what has occurred in Adams County in light of relevant statutory provisions.

Defendants are, pursuant to the Charter School Law, authorized to enroll nonresident students on a space available basis "if available classroom space permits." Section 17-1723-A.

There is no indication that this wording involves technical words and phrases, or has acquired a peculiar and appropriate meaning as defined by statute. 1 Pa.C.S. §1903. Accordingly, the statutory language must be construed according to its common and approved usage. We

therefore interpret "classroom space" as meaning space within a physical classroom setting.[4] To construe it to mean cyberspace, or computer space within the confines of a student's home, would make "classroom" meaningless. Although the Charter School Law has broad policy objectives, we cannot disregard clear words that are free from ambiguity under the pretext of pursuing the Charter School Law's spirit. *Id.* section 1921(b).

The evidence clearly establishes that defendants have no classrooms.

The inescapable conclusion that we draw from all this is that defendants lack authority to enroll students who reside in plaintiffs' districts. Without authority, such enrollment is illegal.

Although we deal with a request for a preliminary injunction, we also have produced an extensive record. It is difficult to believe that a trial would result in substantially additional evidence. Nonetheless, we consider the necessary elements for the grant of a preliminary injunction: (1) plaintiffs' right to relief is clear; (2) the injunction is necessary to prevent immediate and irreparable harm not compensable by damages; (3) greater injury would result by refusing the injunction than by granting it; (4) the injunction restores the parties to the status quo that existed prior to wrongful acts; (5) the activity sought to be restrained is actionable and the injunction is reasonably suited to abate such action. *Singzon v. Common-*

---

4. The American Dictionary of the English Language (Houghton Mifflin Company) defines classroom, "A room in which classes are conducted in a school or college."

*wealth, Department of Public Welfare,* 496 Pa. 8, 436 A.2d 125 (1981).[5] A preliminary injunction may issue upon finding that an organization is acting contrary to statutory requirements or its own regulations. 15 Standard Pennsylvania Practice Injunctions §83.20.

We therefore conclude that (1) plaintiffs' right to relief is clear; (2) an injunction is necessary to prevent a continuing violation of the law and therefore immediate and irreparable harm; (3) as between the parties, allowing defendants to operate in violation of law will result in greater harm than prohibiting them from doing so. We will fashion our decree to accommodate students who have enrolled in good faith; (4) a prohibitory injunction would restore the status quo as it existed before defendants wrongfully enrolled the students; (5) activities sought to be enjoined are actionable and the injunction is reasonably designed to abate such activities.

Although it is clear that plaintiffs have the right to enjoin defendants' activities, we must consider the effect the injunction will have on the students who are enrolled. Time will be needed to either return those students to a classroom setting, or to make arrangements for home schooling. Ordinarily, we would give the parties an opportunity to present a schedule, but do not want to deprive defendants of their right to an immediate appeal. Our decree, therefore, will direct that defendants cease their activity at the end of the present marking period. However, the court will consider any reasonable request to extend the period.

---

5. A more simplified version reciting four requirements is described in 15 Standard Pennsylvania Practice Injunctions §83:18.

*Conclusions of law:*

(1) This court has jurisdiction.

(2) The parties are properly before the court.

(3) Plaintiffs have proven their right to a temporary prohibitory injunction.

## ORDER

And now, December 11, 2001, defendants' preliminary objections are overruled. Defendants shall have the right to plead over in accordance with Pa.R.C.P. 1028(d).

Defendants are enjoined from enrolling or presenting educational services to students residing in plaintiff-school districts. This injunction shall take effect at the end of the present marking period.