378 A.2d 366

L. Robert KIMBALL, Individually and Trading as L. Robert Kimball Consulting Engineers

v.

BARR TOWNSHIP, Appellant.

Superior Court of Pennsylvania.

Submitted April 11, 1977.

Decided Oct. 6, 1977.

Blair V. Pawlowski, Ebensburg, for appellant.

Richard B. Hutchinson, Ebensburg, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

HOFFMAN, Judge:

Appellant, Barr Township, contends that the chancellor erred in impressing a constructive trust on funds paid to it by the Barnes and Tucker Coal Company. We affirm the decree of the lower court.

In 1971, residents of Barr and Blacklick Townships, Cambria County, began suffering a reduction in their water supply due to the mining operations of the Barnes and Tucker Coal Co. Residents of the townships, township supervisors and officials of the Coal Company met to discuss and resolve the water supply problem. The Coal Company agreed to help appellant defray the cost of constructing a new water supply system and, consequently, it requested appellee, a licensed civil engineering firm, to prepare a feasibility report for a water supply and distribution system

for appellant. Appellee prepared four plans or schemes for a proposed water system, each one with a lower estimated cost.[1] Finally, Barr Township supervisors and Barnes and Tucker agreed to implement appellee's Scheme IV.

This plan included an estimated engineering cost of $5,500. Appellee prepared a bill, dated October 7, 1971, for the formulation of the feasibility report. He submitted the $1,637.51 bill to the Barr Township supervisors marked to the attention of Mr. Joseph Wenturine, a township supervisor. Mr. Wenturine gave the bill to Barnes and Tucker who paid it.

On November 4, 1971 Barr and Blacklick Townships and Barnes and Tucker entered into an agreement pursuant to which the company agreed to pay Barr Township $66,000. in order to implement Scheme IV as prepared by appellee. The agreement provided in pertinent part:

"WHEREAS, in a feasibility report prepared by L. Robert Kimball, there appears a revised Scheme IV, which scheme in the opinion of the Supervisors should be implemented as soon as possible in order to alleviate any water loss problems.

"NOW, THEREFORE, in consideration of these premises and other good and valuable considerations, the parties hereto agree as follows:

". . . 2. The Supervisors have selected revised Scheme IV of L. Robert Kimball feasibility report as being the scheme which should be put into operation as soon as possible.

"3. The Supervisors will perform all other items in said feasibility report which are indicated as being their responsibility. . . .

"5. When the Supervisors and/or their agents commence construction the company will contribute the sum of $66,000 toward the construction of the system as envisioned by

1. Because Barnes & Tucker was unwilling to pay a large sum for the construction of a water system, appellee reduced the price of each successive scheme.

revised Scheme IV of the L. Robert Kimball feasibility report.

"6. The contribution of the Company in the amount of $66,000.00 shall be considered the final contribution of the Company toward revised Scheme IV, except in such instances where the Company itself is a user. In which event, the Company would pay charges in accordance with established rate schedules for other users. . . ."

The supervisors of the Township, the Coal Company, area residents, and a member of appellee's firm attended various meetings to discuss the implementation of Scheme IV. Appellant and the Coal Company asked appellee to continue with the project as contemplated in Scheme IV and to perform the engineering work required.

Appellee proceeded to draw up the plans and specifications for the water supply system. Appellee presented the completed plans to Mr. Wenturine who accepted them. Appellee also submitted the complete specifications to the Pennsylvania Department of Environmental Resources (hereinafter DER) in order to obtain a permit to construct the system. DER approved the Scheme IV plans and issued the required permit. Based upon appellee's plans and specifications, Barr Township advertised publicly for bids on the project. Contractors contacted appellee and obtained copies of the plans and specifications to use in the preparation of their bids. The Township received two bids on the project, but it rejected both as too high. Township supervisor, Mr. Wenturine, proceeded personally to hire laborers and subcontractors to construct the water system. He spent the entire sum of $66,000. for construction costs.

On November 4, 1971, appellee submitted his invoice in the amount of $5,500. for engineering services performed in connection with the development of plans and specifications for the water system to Barr Township Supervisor Mr. Wenturine. Mr. Wenturine also gave this bill to the Coal Company. Because the engineering fee was included as a part of the total cost of Scheme IV for which Barnes and Tucker had already agreed to pay the Township, the Coal

Company returned the bill to Mr. Wenturine. Barr Township refused to pay the bill.

On January 23, 1974, appellee filed a complaint in equity requesting that a constructive trust in the amount of $5,500. be impressed upon the $66,000. received by the Township from the Barnes and Tucker Coal Company. After a trial on April 2, 1975, the lower court entered a decree nisi ordering appellant to pay appellee $5,500. together with interest from November 4, 1971. The court en banc denied appellant's exceptions and entered a final decree. This appeal followed.

Appellant contends that appellee failed to introduce evidence upon which the chancellor could make a finding that appellant was a constructive trustee of funds in the amount of $5,500. Pennsylvania courts have frequently adopted Professor Scott's definition of a constructive trust. A constructive trust arises "[w]here a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it." 5 A. Scott, Law of Trusts §§ 462, 462.1 (3rd ed. 1967). See Yohe v. Yohe, 466 Pa. 405, 353 A.2d 417 (1976); Buchanan v. Brentwood F. S. & L. Assoc., 457 Pa. 135, 320 A.2d 117 (1974); Pierro v. Pierro, 438 Pa. 119, 264 A.2d 692 (1970); Chambers v. Chambers, 406 Pa. 50, 176 A.2d 673 (1962); Gray v. Leibert, 357 Pa. 130, 53 A.2d 132 (1947); Restatement of Restitution, § 160 (1937). Our Supreme Court has repeatedly cited with approval the language of Justice Cardozo in Beatty v. Guggenheim Exploration Co., 225 N.Y. 380, 386, 122 N.E. 378, 380 (1919). "A constructive trust, it has often been said, is not really a trust at all but rather an equitable remedy. Like all remedies in equity, it is flexible and adaptable. Changing times and circumstances create different problems for society and, present new questions to the courts. An equity has never been reluctant to right injustices or to correct societal ills." Buchanan v. Brentwood F. S. & L. Assoc., supra 457 Pa. at 151, 320 A.2d at 126. See also Stauffer v. Stauffer, 465 Pa. 558, 351 A.2d 236 (1976); Pierro v. Pierro, supra. Moreover,

a constructive trust may arise even though the acquisition of the property was not wrongful and the defendant's intention was not malign. Our courts focus not on intention, but on the result of unjust enrichment. *Stauffer v. Stauffer*, supra; *Buchanan v. Brentwood F. S. & L. Assoc.*, supra; *Gray v. Leibert*, supra. Restatement of Restitution, § 160, comment b (1938). There is no rigid standard for determining whether the facts of a particular case require a court of equity to impose a constructive trust; we must ascertain whether unjust enrichment can be avoided by imposing a constructive trust.[2]

"[O]n appeal we are bound by the chancellor's findings of fact particularly if approved by the court en banc, to the same extent as we would be bound by the factual determinations of a jury. The test in either case is whether the findings are adequately supported by the record. The chan-

2. The Restatement of Restitution § 40(c) (1937) also provides a theory upon which appellee could seek to recover. It provides in part:

"A person who has rendered services to another or services which have inured to the benefit of another or who has affixed chattels to the land or chattels of another is entitled to restitution therefor if the services were rendered or the chattels were affixed:

". . . (c) in the mistaken belief, on which the other knew or had reason to know, that the services would inure to the benefit of the one giving them or of a third person, or that the other promised to pay for them . . ."

Comment (d) provides in part: ". . . The same result follows where a person accepts services from another, having reason to know that the other is under a belief that the recipient or a third person has promised compensation or is otherwise under a duty to pay for them. In both cases the recipient is liable for the reasonable value of the services irrespective of their value to him. Where he knows that the other is under a mistake as to the terms of payment, his conduct in permitting the continuance of the services subjects him to liability for their value: under some conditions, his conduct may amount to an acceptance of an offer by the other and result in a contract for payment of the price as the other believes it to be." Appellee might have been precluded from seeking to impose a constructive trust because it rendered services to appellant. See, e. g., Restatement of Restitution § 160, Comment (*i*). However, in the instant case, there has been a transfer of a specific fund to appellant for the payment of appellee's fee. This circumstance permits appellee to seek to impress a constructive trust instead of seeking restitution under § 40 of the Restatement.

cellor's findings are entitled to particular weight in a case in which the credibility of the witnesses must be carefully evaluated, because he has had the opportunity to hear them and to observe their demeanor on the stand." *Stauffer v. Stauffer*, supra 465 Pa. at 567, 351 A.2d at 240; *Charles v. Henry*, 460 Pa. 673, 334 A.2d 289 (1975); *Gray v. Leibert*, supra.

In the instant case, the chancellor made specific findings of fact. He concluded *inter alia:*

". . . 10. The plans and specifications prepared by the plaintiff were used by the defendant in making application to the Commonwealth of Pennsylvania to secure a water supply permit, to advertise publicly for the securance of bids for the construction of a water system and as a basis for the defendant to subsequently construct its own water line.

"11. Based on the plans and specifications prepared by the plaintiff, defendant did obtain a water supply permit from the Commonwealth of Pennsylvania and did receive construction bids from two contractors.

"12. The plans and specifications of the plaintiff were used in the negotiations, discussions and meetings of the defendant with State officials and the Barnes and Tucker Company. For these plans and specifications the plaintiff submitted his bill dated November 4, 1971 for 'Engineering Services for Permit Requests and bidding requests for Barr Township Water Supply System' in the amount of $5,500.00 as set forth in said Revised Scheme IV. . . .

"18. Plaintiff's work product, as well as its cost estimate, was the basis upon which the Barnes and Tucker Company paid $66,000 to Barr Township, which sum included the itemized amount of $5,500 for engineering services."

The record in the case at bar reveals that appellee performed professional engineering services for appellant which consisted of the preparation of engineering plans and specifications for the construction of a water supply system for Barr and Blacklick Townships. Appellee delivered the

plans to appellant and appellant accepted them. Appellee, a professional who provides expert engineering advice for a fee, performed these services under circumstances which clearly indicated that he expected remuneration. Additionally, he submitted a bill to appellant for work performed on the feasibility study. Although Barnes and Tucker paid the first bill, prior to the settlement agreement, appellant was obviously aware that appellee expected payment for all of his services.

The record supports the chancellor's findings that appellant used and benefitted from appellee's work product. Based upon the plans and specifications, appellant received a water permit from DER, advertised and received bids on the project, and used the plan as a basis to build its own system. Appellant also used the feasibility reports to negotiate a settlement amount with Barnes and Tucker. Appellant knew that the $66,000. amount in Scheme IV included $5,500. designated for engineering expenses. Appellant also knew that appellee was performing those engineering services at the same time that appellant was negotiating for the settlement. Barnes and Tucker relied on the inclusion of the engineering fees in its agreement with Barr Township and assumed that the Township would pay appellee's fees from the settlement amount. The Township knew that the Coal Company's payment included an amount designed to pay appellee's engineering bill.[3] The agreement stated that appellee's Scheme IV would be implemented; this included the payment of fees to appellee. Thus, appellant knew that appellee was performing engineering services for its benefit.

**3.** Although appellant alleges that he no longer possesses the funds provided by Barnes and Tucker, this does not prevent us from impressing a constructive trust on appellant. If appellee is to be successful in holding appellant liable as a constructive trustee, it must establish that a res exists or existed upon which a constructive trust can be impressed. See Restatement of Restitution § 160 (1937). However, if appellant held property at any point in time which properly can be decreed the subject of a constructive trust, the mere fact that he does not now hold such property will not preclude the imposition of personal liability upon it for the improper disposition of such property. Philadelphia v. Mancini, 431 Pa. 355, 246 A.2d 320 (1968).

Indeed, appellant requested appellee to perform these services. These facts present the classic case for the imposition of a constructive trust. We, therefore, impose a constructive trust upon appellant to the amount of $5,500. together with interest thereon from November 4, 1971. Decree affirmed.