**LOUIS DOLENTE & SONS,**

v.

**UNITED STATES FIDELITY AND GUARANTY CORP. t/a the St. Paul Companies.**

**Civil Action No. 02–8226.**

United States District Court, E.D. Pennsylvania.

March 24, 2003.

Nicholas Deenis, Stradley, Ronon, Stevens & Young LLP, Philadelphia, PA, for Defendant.

John H. Kiefel, Law Offices of John H. Kiefel, Downingtown, PA, for Plaintiff.

## MEMORANDUM

BAYLSON, District Judge.

The issue presented is whether Plaintiff has adequately pled a constructive trust; if not, this Court lacks jurisdiction because the amount in controversy will be under $75,000. The Court will, however, allow Plaintiff to amend its Complaint.

Louis Dolente & Sons (herein "Plaintiff") filed this civil action against United States Fidelity and Guaranty Corporation ("Defendant"), in the Court of Common Pleas of Montgomery County. In Count I of its Complaint, Plaintiff seeks monetary damages totaling $28,515.83, based on allegations that Defendant has breached a payment bond and violated Pennsylvania's Public Works Contractors' Bond Law of 1967, 8 P.S. §§ 191–202 (herein "Public Bond Law"). *See* Complaint ¶ 6–20. Count II, however, seeks equitable relief against Defendant, in the form of a constructive trust, over a sum of money totaling $165,093.45. *See id.* ¶ 21–35. With respect to both counts, Plaintiff also seeks interest, attorney's fees and costs of suit. *See id.* at 5, 7.

On October 30, 2002, Defendant filed a Notice of Removal (herein "Removal"), pursuant to 28 U.S.C. § 1441(a).[1] Presently before this Court is Defendant's Motion to Dismiss Plaintiff's Request for Attorney's Fees and Costs, and to Dismiss Count II of the Complaint in its Entirety, Pursuant to Rule 12(b)(6). For the reasons which follow, Defendant's Motion shall be granted in part, Count II of the Complaint shall be dismissed without prej-

---

**1.** Defendant's Notice of Removal was timely under 28 U.S.C. § 1446(b), as it was filed within thirty days after Defendant's receipt of service of the Complaint on September 30, 2002. *See* Removal, Ex. B.

udice and Plaintiff shall have twenty days from the date of this Order, within which to file an Amended Complaint.

## I. Jurisdiction

In its Notice of Removal, Defendant suggests that this Court has jurisdiction based on diversity of citizenship. *See* Removal ¶ 7. The relevant jurisdictional statute provides:

(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $ 75,000, exclusive of interest and costs, and is between—

(1) Citizens of different States;

. . .

(c) For the purposes of this section and section 1441 of this title—

(1) a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business . . . .

28 U.S.C. § 1332(a) and (c). According to the Complaint, Plaintiff is a citizen of Pennsylvania and Defendant is a citizen of Maryland. *See* Complaint ¶ 1–3. Count I of the Complaint seeks monetary damages totaling $28,515.83. *See* Complaint ¶ 6–20. While Count I standing alone does not allege an amount in controversy exceeding $75,000, Count II seeks the imposition of a constructive trust over an amount totaling $165,093.45. *See id.* ¶ 21–35.

In injunctive actions, the amount in controversy is measured by "the value of the right sought to be protected by the equitable relief." *In re Corestates Trust Fee Litigation*, 39 F.3d 61, 65 (3d Cir. 1994). *See also Rosen v. Chrysler Corp.*, 205 F.3d 918, 922 (6th Cir.2000) (holding that amount of money, over which constructive trust is sought to be imposed, must be included in determining amount in controversy); *Feldman v. New York Life Ins. Co.*, No. 97–cv–4684, 1998 WL 94800, at *4 n. 2 (E.D.Pa. March 4, 1998) (finding diversity jurisdiction met; noting that final count seeking constructive trust could alone be basis for diversity jurisdiction "if the value of the rights to be impounded appear to exceed $75,000").

Accordingly, this Court has jurisdiction over the present matter, for purposes of deciding the present motion to dismiss. However, should this Court ultimately dismiss Count II for failure to state a claim upon which relief can be granted, no basis for federal jurisdiction will remain. *See* 28 U.S.C. § 1367(c)(3).

## II. Legal Standard on Rule 12(b)(6) Motion to Dismiss

When deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court may look only to the facts alleged in the complaint and its attachments. *See Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir.1994). The court must accept as true all well pleaded allegations in the complaint and view them in the light most favorable to the plaintiff. *See Angelastro v. Prudential–Bache Sec., Inc.*, 764 F.2d 939, 944 (3d Cir.1985). A Rule 12(b)(6) motion will be granted only when it is certain that no relief could be granted under any set of facts that could be proved by the plaintiff. *See Ransom v. Marrazzo*, 848 F.2d 398, 401 (3d Cir.1988).

## III. Allegations of the Complaint

Plaintiff alleges the following facts, which, for the purpose of deciding the instant motion, will be read in the light most favorable to Plaintiff.

### A. *Allegations of Count I*

On or about May 11, 1999, Plaintiff entered into a written subcontract with an entity called Bilt Rite, whereby Plaintiff would provide labor, equipment and materials for a public elementary school construction project. The original sum of the subcontract was $691,000.00. *See* Complaint ¶ 7. Defendant, as a surety, provided a Payment Bond to Bilt Rite, as principal for the project. *See id.* ¶ 8.

Thereafter, the parties to the subcontract modified the terms of their agreement, increasing the total subcontract amount to $712,269.83. *See id.* ¶ 9. Plaintiff timely and adequately performed all of its obligations under the subcontract. *See id.* ¶ 10. However, Bilt Rite has paid Plaintiff only $683,754.00 of the sum due under the modified subcontract. *See id.* Accordingly, Plaintiff is still owed $28,515.83. *See id.* ¶ 11. Plaintiff has repeatedly demanded that Bilt Rite pay this remaining balance. *See id.*

Plaintiff alleges that it is a "Claimant" under the Payment Bond issued by Defendant. *See id.* ¶ 15. Following Bilt Rite's breach and default, Defendant has failed to make payment to Plaintiff, though Plaintiff timely notified Defendant of the balance due. *See id.* ¶ 16, 18. Plaintiff contends that Defendant's refusal in this regard is a breach of the Payment Bond, as well as a violation of the Public Bond Law. *See id.* ¶ 16. As a result of Defendant's refusal, Plaintiff has sustained a loss of $28,515.83, equal to the amount of money Plaintiff claims is still due under the subcontract. *See id.* ¶ 17. Both the terms of the Payment Bond and the Public Bond Law, according to Plaintiff, authorize Plaintiff's recovery of this amount from Defendant.

### B. *Allegations of Count II*

On or about July 1, 1997, almost two years prior to the 1999 subcontract discussed above, Plaintiff entered into a subcontract with Bilt Rite to perform construction work and provide materials for the construction of a public middle school in the East Penn School District. *See* Complaint ¶ 22. The sum of the contract was $1,193,100.00. *See id.* The parties to this 1997 subcontract thereafter modified its terms, raising the total value of the contract to $1,259,667.40. *See id.* ¶ 23. Defendant issued a Payment Bond in relation to this 1997 middle school project. Plaintiff is a Claimant under that Payment Bond. *See id.* ¶ 29.

Plaintiff timely and adequately performed all of its obligations under this 1997 middle school subcontract. *See id.* ¶ 24. However, Bilt Rite has paid Plaintiff only $1,163,943.00 of the sum due under the modified 1997 subcontract. *See id.* Accordingly, Bilt Rite is in default and Plaintiff is still owed $95,724.40 under the 1997 subcontract. *See id.* ¶ 25–26.

In the meantime, Bilt Rite has begun litigation against the East Penn School District. *See id.* ¶ 30. Following its default on the middle school agreement, Bilt Rite orally agreed with Plaintiff that Bilt Rite "would assert and sponsor" Plaintiff's claims, totaling $165,093.45, in Bilt Rite's lawsuit against the school district.[2] *See id.* As a result of Bilt Rite's oral agreement to assert Plaintiff's claims, Plaintiff refrained from filing a lawsuit against Defendant under the terms of the Payment Bond, which Defendant issued in relation to the East Penn project. *See id.* ¶ 31. The Complaint seems to suggest, though not explicitly, that Plaintiff failed to sue Defendant on the Payment Bond within the relevant limitations period, or within the time

---

**2.** The Complaint is not entirely clear as to the factual basis supporting the $165,093.45 figure; if Plaintiff elects to file an Amended Complaint, the facts should be so stated.

required by the Payment Bond. "In the alternative," Plaintiff alleges, "in the event Bilt Rite denies the existence of such an agreement, Bilt Rite engaged in deceptive or concealing conduct which estops it and its surety from raising the statute of limitations, or Payment Bond time limitation as a defense." *Id.*

Moreover, Plaintiff alleges that Defendant "holds certain subrogation and/or indemnity rights to any and all proceeds generated" by Bilt Rite's litigation against the school district. *See id.* ¶ 32. Further, the Complaint asserts that Defendant's right to subrogation is not superior to Plaintiff's rights, with respect to the proceeds of the school district litigation, "as a result of Bilt Rite's agreement to assert and sponsor" Plaintiff's claims in that litigation. *See id.* ¶ 33. Accordingly, Count II demands judgment against Defendant in the form of a constructive trust over any proceeds, to which Defendant may hold subrogation rights, following Bilt Rite's recovery of any amount of money in the school district litigation. *See id.* ¶ 34.

## IV. Sufficiency of the Complaint

Defendant asserts, *inter alia,* that Count II of the Complaint should be dismissed in its entirety for failure to state a claim. *See* Memorandum of Law in Support of Defendant's Motion to Dismiss Plaintiff's Request for Attorney's Fees and Costs and to Dismiss Count II of the Complaint in its Entirety, Pursuant to Rule 12(b)(6) (herein "Def. Brief") at 9–16.

█ Pennsylvania courts recognize that a constructive trust "is not really a trust at all but rather an equitable remedy." *Gee v. Eberle,* 279 Pa.Super. 101, 420 A.2d

1050, 1056 (1980) (*quoting Buchanan v. Brentwood Fed. Sav. & Loan Ass'n,* 457 Pa. 135, 320 A.2d 117, 126 (1974)). The theory underlying the constructive trust doctrine is that "[w]hen property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee." *Id.* Courts will impose a constructive trust only where the defendant has acquired the property at issue as a result of fraud, duress, undue influence, mistake, abuse of a confidential relationship, or other such circumstances suggesting unjust enrichment.[3] *See Yohe v. Yohe,* 466 Pa. 405, 353 A.2d 417, 421 (1976); *Santoro v. Morse,* 781 A.2d 1220, 1231 (Pa.Super.2001).

The Supreme Court of Pennsylvania has explained that there is "no rigid standard for determining whether the facts of a particular case require a court of equity to impose a constructive trust; the test is whether or not unjust enrichment can thereby be avoided." *Stauffer v. Stauffer,* 465 Pa. 558, 351 A.2d 236, 241 (1976). Thus, courts have observed that, if the remedy of constructive trust can prevent unjust enrichment, it may be employed "even though the acquisition of the property was not wrongful and the defendant's intention was not malign." *Kimball v. Barr Township,* 249 Pa.Super. 420, 378 A.2d 366, 369 (1977).

In the present case, the Complaint does not allege that Defendant engaged in any type of fraud, misrepresentation, duress, undue influence, abuse of fiduciary relationship, or any other conduct that, if proven, would suggest that Defendant has been unjustly enriched. Count II alleges that,

**3.** Pennsylvania courts have adopted section 160 of the Restatement of Restitution, which provides: "Where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it, a constructive trust arises." Restatement (First) of Restitution § 160 (1937) (*cited in Stauffer v. Stauffer,* 465 Pa. 558, 351 A.2d 236, 241 (1976)).

following its default on the middle school agreement, Bilt Rite orally agreed with Plaintiff that Bilt Rite "would assert and sponsor" Plaintiff's claims, in Bilt Rite's lawsuit against the school district. *See* Complaint ¶ 30. As a result of Bilt Rite's oral agreement to assert Plaintiff's claims, Plaintiff refrained from filing a lawsuit against Defendant under the terms of the Payment Bond. *See id.* ¶ 31. Plaintiff vaguely alleges, "in the event Bilt Rite denies the existence of such an agreement," that Bilt Rite "engaged in deceptive or concealing conduct which estops it and its surety from raising the statute of limitations, or Payment Bond time limitation as a defense." *Id.*

Such generalized assertions cannot even satisfy the liberal pleading requirements under the Federal Rules of Civil Procedure. *See* Fed.R.Civ.P. 9(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."). Plaintiff's Complaint contains only a single short paragraph (¶ 31) in support of its conclusory allegation that Bilt Rite somehow deceived Plaintiff, causing Plaintiff to miss the deadlines for making a claim against Defendant, the surety.

The Complaint does not suggest that Defendant knew about, or in any way participated in Bilt Rite's supposedly deceitful conduct—whatever that conduct may have been. Even if Plaintiff were to show that it simply made a mistake in not timely suing Defendant, as a result of misrepresentations by Bilt Rite, such oversight on the part of Plaintiff does not support an equitable claim against Defendant. The most important prerequisite for a con-

structive trust action, namely, unjust enrichment, is entirely missing from Plaintiff's Complaint.

Aside from unjust enrichment, another element necessary to support a constructive trust is an actual *"res,"* to which the defendant holds title or possession. The Superior Court has noted that "an essential requisite" for the imposition of a constructive trust is "an identifiable *res,* that is, a debt, duty, or obligation owing by one person to another," upon which a constructive trust may be imposed.[4] *Gee,* 420 A.2d at 1061 n. 9. *See also HCB Contractors v. Rouse & Assoc., Inc.,* No. Civ.A. 91–5350, 1992 WL 176142, at *10 (E.D.Pa. July 13, 1992); *Kimball,* 378 A.2d at 370 n. 3.

The United States Supreme Court has recently had occasion to consider the equitable doctrine of constructive trust, in the context of a dispute under a section of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(3). *See Great–West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 213–14, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002). The *Knudson* decision confirms that, to sustain an action for a constructive trust—or for other "restitution in equity"—the action generally "must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property *in the defendant's possession." Id.* at 214, 122 S.Ct. 708 (emphasis added). This conclusion is consistent with Pennsylvania law.

In *Knudson,* the defendant was a beneficiary under an employment benefits plan governed by ERISA. After the defendant was seriously injured in an accident, the plaintiff insurance company paid much of

---

4. A Comment to the Restatement of Restitution, § 160, states that a "constructive trust does not arise unless there is property on which the constructive trust can be fastened, and such property is held by the person to be charged as constructive trustee." Restatement (First) of Restitution § 160, cmt. i. (1937) (*cited in In re Penn Cent. Transp. Co.,* 333 F.Supp. 77, 81 (E.D.Pa.1971)).

her medical costs. However, the benefits plan included a reimbursement provision, whereby the insurer could recover from the beneficiary any payment for benefits that the beneficiary is able to recovery from a third party. *See id.* at 207, 122 S.Ct. 708. The beneficiary filed a state court action against certain third party tortfeasors. At around the time that the parties to that separate state court litigation reached a settlement, the insurer sued the beneficiary in federal court, seeking equitable restitution, from any proceeds the beneficiary might recover from the third party tort-defendants. *See id.* at 208, 122 S.Ct. 708. After the state court approved the settlement and the funds were disbursed (though the beneficiary herself had not yet received any portion), the district court granted summary judgment for the beneficiary.

The Supreme Court held that ERISA did not authorize the type of equitable action brought by the insurer, because the relief sought was actually legal, not equitable. *See id.* at 221, 122 S.Ct. 708. In the course of its analysis, the Court looked to traditional concepts surrounding equitable remedies. The *Knudson* Court explained that, in contrast to an action "at law," *i.e.* for breach of contract,

> a plaintiff could seek restitution in equity, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession. A court of equity could then order a defendant to transfer title (in the case of the constructive trust) or to give a security interest (in the case of the equitable lien) to a plaintiff who was, in the eyes of equity, the true owner. But where "the property [sought to be recovered] or its proceeds have been dissipated so that no product remains,

[the plaintiff's] claim is only that of a general creditor," and the plaintiff "cannot enforce a constructive trust of or an equitable lien upon other property of the [defendant]." Thus, for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession.

*Id.* at 213–14, 122 S.Ct. 708 (citations omitted) (alterations in original). Applying these principles in the case before it, the Court stated:

> Here, the funds to which petitioners claim an entitlement under the Plan's reimbursement provision—the proceeds from the settlement of respondents' tort action—*are not in respondents' possession.* As the order of the state court approving the settlement makes clear, the disbursements from the settlement were paid by two checks, one made payable to the Special Needs Trust and the other to respondents' attorney (who, after deducting his own fees and costs, placed the remaining funds in a client trust account from which he tendered checks to respondents' other creditors, Great–West and Medi–Cal). *The basis for petitioners' claim is not that respondents hold particular funds that, in good conscience, belong to petitioners, but that petitioners are contractually entitled to some funds for benefits that they conferred.* The kind of restitution that petitioners seek, therefore, is not equitable—the imposition of a constructive trust or equitable lien on particular property—but legal—the imposition of personal liability for the benefits that they conferred upon respondents.

*Id.* at 214, 122 S.Ct. 708. Accordingly, the Court affirmed the grant of summary judgment. *See also Primax Recoveries*

*Inc. v. Carey,* 247 F.Supp.2d 337, 341–42 (S.D.N.Y.2002) (following *Knudson*).

While the constructive trust claim in the present case is brought pursuant to Pennsylvania law, the Supreme Court's analysis in *Knudson* is consistent with Pennsylvania law. Plaintiff's Complaint does not allege that Defendant, United States Fidelity and Guaranty Corporation, presently holds title to the funds in question. Reading the facts of the Complaint in the light most favorable to Plaintiff, the most that the Complaint alleges is that Defendant may *potentially* acquire certain proceeds stemming from the separate litigation between Bilt Rite and the East Penn school district, which litigation was *still ongoing* as of the filing of the present Complaint. Bilt Rite could, of course, lose that case, or ultimately recover less than the amount Plaintiff expects Bilt Rite will recover. Plaintiff insinuates that, following the school district litigation, Defendant will come into possession of the litigation's proceeds, because of its subrogation rights. However, at this point, any proceeds of that litigation are purely hypothetical, and cannot satisfy the requirement that an actual and certain amount of money or property exist, to which Defendant holds title, before the equitable remedy of constructive trust may become available.[5]

Because Plaintiff has not set forth a factual basis to support the imposition of a constructive trust, Count II fails to state a claim upon which relief can be granted.

## V. Subject Matter Jurisdiction as to Count I

Count I asserts a claim for damages totaling $28,515.83. This amount does not exceed the statutorily-required amount in controversy of $75,000, for purposes of diversity jurisdiction. *See* 28 U.S.C. § 1332(a). Because Count II must be dismissed, leaving only Count I as a basis for the present lawsuit, the claims set forth in the Complaint cannot support diversity jurisdiction.

The rule is clear that if "at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded" to the state court in which the action originated. 28 U.S.C. § 1447(c). Accordingly, this Court cannot exercise supplemental jurisdiction over the state law claim appearing in Count I. *See* 28 U.S.C. § 1367(c)(3); *Markowitz v. Northeast Land Co.,* 906 F.2d 100, 106 (3d Cir.1990) (noting "the rule within this Circuit is that once all claims with an independent basis of federal jurisdiction have been dismissed the case no longer belongs in federal court") (*citing Lovell Mfg. Corp. v. Export–Import Bank of U.S.,* 843 F.2d 725, 734 (3d Cir.1988)).

## VI. Leave to Amend

Leave to amend a pleading "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). Grant of leave to amend is within the discretion of the district court. *See Zenith Radio Corp. v. Hazeltine Research,* 401 U.S. 321, 330, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971). Prejudice to the non-moving party "is the touchstone for the denial of an amendment." *Lorenz v. CSX Corp.,* 1 F.3d 1406, 1414 (3d Cir. 1993) (*quoting Cornell & Co. v. Occupa-*

---

**5.** Plaintiff relies heavily on *U.S. Fidelity & Guar. Co. v. Ernest Const. Co.,* 854 F.Supp. 1545 (M.D.Fla.1994.). The *Ernest* case is distinguishable from the instant case on a number of grounds, not the least of which is that the *Ernest* court imposed a constructive trust on funds "being retained" by the defendant surety. *Id.* at 1563. By contrast, in the present case, Plaintiff merely avers that Defendant will, in the future, receive certain proceeds as a result of a separate litigation between a third party, Bilt Rite, and a fourth party, the school district.

**186**

*tional Safety & Health Rev. Comm'n,* 573 F.2d 820, 823 (3d Cir.1978)). In the absence of substantial prejudice, "denial instead must be based on bad faith or dilatory motives, truly undue or unexplained delay, repeated failures to cure the deficiency by amendments previously allowed, or futility of amendment." *Id.* None of these reasons for denial are presented in the instant case.

Although Plaintiff's Complaint fails to allege at least two necessary conditions for the imposition of a constructive trust, *i.e.* unjust enrichment and an ascertainable "*res,*" this Court cannot foreclose the possibility that Plaintiff may be able to satisfactorily amend its pleading, adding sufficient facts to sustain the equitable claim set forth in Count II. There may have been significant developments in the underlying facts since Plaintiff's Complaint was filed. Accordingly, Plaintiff shall have twenty days from the date of this Order, within which to file an Amended Complaint. If Plaintiff does not file such amended pleading, this Court shall remand this case to the Court of Common Pleas of Montgomery County.

## VII. Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss Plaintiff's Request for Attorney's Fees and Costs and to Dismiss Count II of the Complaint in its Entirety, Pursuant to Rule 12(b)(6), shall be granted in part; Count II of the Complaint shall be dismissed; and Plaintiff shall have twenty days from the date of this Order, within which to file an Amended Complaint.

An appropriate Order follows.